**BRACH EICHLER LLC**
Rosaria A. Suriano, Esq.
Mark A. Fantin, Esq.
101 Eisenhower Parkway
Roseland, NJ 07068
Phone: (973) 228-5700
Fax:    (973) 618-5951
*Attorneys for Plaintiff*
*Frazier Industrial Company*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| FRAZIER INDUSTRIAL COMPANY,<br><br>*Plaintiff*,<br><br>v.<br><br>NICKLAUS M. LOGRECCO a/k/a NICK LOGRECCO, REB STEEL EQUIPMENT CORP. d/b/a REB STORAGE SYSTEMS INTERNATIONAL and JOHN DOES, 1-10,<br><br>*Defendants*. | Civil Action No.: 18-cv-12426-JMV-JBC<br><br>Civil Action<br><br>**AMENDED COMPLAINT** |

Plaintiff, Frazier Industrial Company, by way of this Amended Complaint against Defendants REB Steel Equipment Corp. d/b/a REB Storage Systems International ("REB") and Nicklaus M. Logrecco a/k/a Nick Logrecco ("Logrecco") and John Does, 1-10, hereby states as follows:

## NATURE OF THE ACTION

1.      This is an action seeking injunctive relief arising from (a) the breach of post-employment restrictive covenants by Nicklaus M. Logrecco a/k/a Nick Logrecco ("Logrecco"), a key former employee of Plaintiff Frazier Industrial Company ("Frazier") and (b) arising from

Logrecco's improper access to and potential theft and misappropriation of Frazier confidential and proprietary information and trade secrets.

2.  Throughout his employment with Frazier, Logrecco was given access to and learned Frazier's trade secrets and proprietary and confidential business information, including without limitation Frazier's key customer and supplier contacts, Frazier's proprietary designs and design techniques, customers' specific logistics and warehousing needs and buying habits, Frazier's delivery and lead times and Frazier's pricing and estimating strategies.

3.  Frazier recently learned that the day before he resigned from his employment with Frazier, Logrecco created a back-up of his Frazier issued laptop's hard drive and that just before his last day of work for Frazier, he used two (2) USB storage devices to save, access and/or copy files on the laptop, including the back-up he created.

4.  Demand was immediately made upon Logrecco, through his counsel, to return the two (2) USB storage devices, and any other Frazier property or information that remains in Logrecco's possession on or before August 3, 2018.  Attached as "Exhibit A" hereto is a true copy of the August 1, 2018 correspondence to Logrecco's counsel.

5.  Demand was also made upon REB, through its counsel, to confirm on or before August 3, 2018 that: (1) REB is not in possession of any Frazier documents or information, in any way, learned acquired, developed or created by reason of Logrecco's employment with REB; and (2) Logrecco has not saved any Frazier documents or information on any REB server, computer or device.  Attached as "Exhibit B" hereto is a true copy of the August 1, 2018 correspondence to REB's counsel.

6.  Neither Logrecco nor REB has responded, in any manner, to Frazier's demands.

-2-

7.      In order to protect its legitimate business interests by preventing its project managers from using and disclosing these trade secrets and proprietary and confidential business information, Frazier required that Logrecco execute a Confidentiality and Non-Compete Agreement and an Ethics Policy, which he did.  Attached as "Exhibit C" and "Exhibit D" hereto are a true copies of the Confidentiality and Non-Compete Agreement and Ethics Policy.

8.      In violation of his covenants to Frazier, Logrecco has accepted a project manager position with REB Steel Equipment Corp. d/b/a REB Storage Systems International ("REB"), a competitor of Frazier which has hired Logrecco, upon information and belief, to perform the same duties Logrecco performed while at Frazier.

9.      By doing so, REB is seeking to harness the trade secrets and confidential and proprietary information obtained by Logrecco while at Frazier in order to expand its business into areas where it does not have a presence so that it can outbid Frazier on projects to steal Frazier's business and customers.

10.      Enforcement of the Confidentiality and Non-Compete Agreement requires that injunctive relief be entered because Logrecco has stolen Frazier's proprietary and confidential information and copied his entire Frazier hard drive and presumably placed this information on REB's computer network.  Thus, Defendants have possession of Frazier's trade secrets and other confidential and proprietary information.  Such conduct constitutes misappropriation in violation of New Jersey common law and the New Jersey Trade Secrets Act and is also an actionable breach of Logrecco's confidentiality agreement, which precludes Logrecco from disclosing to unauthorized persons, including subsequent employers, Frazier's customer contacts, specific customer buying habits and needs, pricing and estimating strategies.

11.     For these reasons, Frazier has a compelling and legitimate interest in the return of its information, its trade secrets and its proprietary and confidential business information.  Now, as a consequence of the Defendants' actions, REB will unfairly compete with Frazier by taking advantage Frazier confidential and proprietary information that Logrecco misappropriated from Frazier, in addition to Logrecco's intimate familiarity with and understanding of the confidential and proprietary information he learned while employed by Frazier, which are not commonly known in the industry, in order to undercut Frazier's bids for customers and projects.  For these reasons, the Confidentiality and Non-Compete Agreement should be enforced and an injunction issued to enjoin and restrain Logrecco from employment with Defendant REB, compelling the immediate return by Defendants of any Frazier confidential and proprietary information, and allowing for other relief.

## FACTS RELEVANT TO ALL COUNTS

12.     Plaintiff Frazier Industrial Company ("Frazier") is a New Jersey corporation, with its principal place of business at 91 Fairview Ave., Long Valley, County of Morris, New Jersey.

13.     Defendant Logrecco is an individual residing at 1377 Grassland Road, Dayton, Nevada and was employed by Frazier from December 4, 2012 through May 18, 2018.

14.     Defendant REB is an Illinois corporation authorized to do business in the State of New Jersey.  Upon information and belief, Defendant REB is a national company conducting business throughout the United States, including in New Jersey, through branch offices in Pennsylvania, New York, Texas, Florida, Southern California, Massachusetts and Maine.

15.     Defendants John Does, 1-10, are fictitious names for additional officers, directors or shareholders of Defendant REB who, by his or her actions, intentionally directed, encouraged, and was responsible for the actions of REB described herein.

I.      **Frazier's Unique Products and Services**

16.     Frazier is a leader in the design, manufacture and installation of steel rack systems.  It is one of the largest structural steel rack system designers and manufacturers in North America.

17.     Frazier does not mass produce its products, it does not sell pre-made or pre-fabricated products and it does not have a showroom for a customer to walk into and order a rack system.  Instead, all of Frazier's products and services are custom-made and tailored to the specific needs of each customer.  Frazier's customers are generally large national and international retailers.

18.     Frazier is widely recognized as an industry leader due to years of amassing extensive experience utilizing its proprietary design and manufacturing processes, marketing strategy and pricing techniques to quickly, efficiently, and accurately create innovative designs and state of the art rack systems to meet each customer's unique logistics specifications.  A customer's individual specificities, needs and buying habits are key to Frazier's relationship with its customers, allowing Frazier to sell additional rack systems to its customers and to build onto existing rack systems.  Customer relationships, buying habits of customers and pricing are critical to Frazier's ability to foster its relationships and sustain a competitive advantage, because many customers are repeat customers.

19.     For example, a large big-box retailer with warehouses across North America will contract with Frazier to manufacture, design and install a racking system at one of its locations. During this process, Frazier and its project manager, who oversees and implements the system, learn important details about the customer and its specific needs.  Frazier's project managers learn:

a.      The customer contact person, title and position;

b.      The location of that person;

c.      The buying habits of the customer (the type of system the customer utilizes, the products stored and moved by the customer, how the customer needs to handle, move and ship its products and materials); and

d.      Pricing – the costs, expenses and purchases of the customer, as it relates to a racking system, and have intimate knowledge of Frazier's margins, costs, including labor costs, material costs, information on what is purchased from vendors and how Frazier captures margins, costs and purchases impacting pricing.

20.     It has taken Frazier years of research, marketing, investment of resources, time and substantial money to develop its techniques and processes, pricing strategies and to get to know its customers' building needs, which are not commonly known in the industry.  Because of the sensitive nature of this information, Frazier has also expended significant time and resources to protect this information, which has allowed it to maintain a competitive advantage.

21.     In order to protect Frazier's confidential and proprietary information, and also to protect its customer relationships and good will, Frazier requires that all employees (including Defendant, Logrecco) who have access to Frazier's confidential information execute a confidentiality agreement and a non-competition agreement as a condition of employment and before receiving access to Frazier's proprietary and confidential information.  Frazier also requires that its employees execute an Ethics Policy.

-6-

II.   **Logrecco's Employment With Frazier**

22.     Prior to joining Frazier, Logrecco, upon information and belief, owned a construction and excavating firm and was in the construction industry, where he worked for many years.

23.     Because of his employment by Frazier, Logrecco learned and applied Frazier's confidential and proprietary solutions and strategies to perform his job as senior project manager.

24.     As a senior project manager, Logrecco was actively involved in and managed the installation of the rack system for Frazier's customers.  As part of this process, Logrecco interacted with Frazier's customers, suppliers and vendors.  Indeed, he was the face of Frazier on site and would interface directly with these customers, suppliers and vendors during the entire installation process to, among other things, schedule, calculate lead times and implement the rack systems.  All of this information would be found on Logrecco's Frazier issued laptop, which Logrecco made a copy of prior to his resignation from Frazier.

25.     Thus, because of his interface with Frazier's customers and suppliers, Logrecco has detailed knowledge of the specific needs of Frazier's customers and how to meet those requirements, allowing Frazier to gain a competitive advantage.  For example, Frazier recently manufactured and installed a rack system for a large liquor distributor whose products are primarily stored in glass containers.  Frazier's project manager gained intimate knowledge of the pricing for that project, including costs, margins, labor rates, the buying habits of the customer, as it relates to the racking system, and the customer's logistical needs to store, maneuver and ship its products.  In addition, the project manager interfaces with the client regularly.  These details are not known to the public.  However, as a project manager for a competitor, who

performs the same duties, tasks and functions, the project manager will inevitably use Frazier's proprietary information to perform the same duties and disclose it.

26.     As stated, as senior project manager, Logrecco also has intimate knowledge of the pricing and costs of Frazier's projects.  He knows Frazier's pricing and estimating strategies for its rack systems, such as material costs, labor costs, and margins, as well as administering and maintaining project budgets.  Importantly, by managing Frazier's projects, Logrecco has gained specific knowledge regarding the pricing needs and buying habits of Frazier's customers and Frazier's ability to meet these requirements.

27.     As senior project manager, Logrecco has also learned Frazier's lead times and delivery times, including how much time Frazier needs to design, develop, manufacture and install its systems – all of which impact estimating and pricing.  Because of this, Logrecco knows exactly what Frazier's customers' time requirements are and how Frazier meets those requirements.

28.     Finally, Logrecco has also learned Frazier's manufacturing, engineering and design techniques and new technologies.  All of this information, including *inter alia*, project designs and customer specifications, were electronically stored on Logrecco's Frazier issued laptop.

29.     Because Frazier is recognized as an industry leader in storage rack solutions, a position which has taken Frazier decades to establish, Logrecco's knowledge of Frazier's proprietary information is extremely valuable to competitors.  Logrecco's copying of his Frazier laptop's hard drive demonstrates his intention to use Frazier's confidential and proprietary business information to unfairly compete against Frazier.

30.     Thus, if he has not done so already, it is inevitable that Logrecco will disclose Frazier's information about customer contacts, customer buying habits, margins and customers' specifications and other needs to unfairly compete with Frazier, because he will be performing the same job, duties and functions for Defendant REB, a competitor.

31.     Because of the extensive confidential information given and available to Logrecco and as a condition of his employment, Logrecco executed a Confidentiality, Invention and Non-Compete Agreement (the "Confidentiality and Non-Compete Agreement") dated December 4, 2012 containing various confidentiality covenants and a non-compete provision in favor of Frazier.  See Ex. C.

32.     On April 4, 2014, Logrecco also executed Frazier's Conflict of Interest and Ethics Policy (the "Ethics Policy").  See Ex. D.

33.     The Confidentiality and Non-Compete Agreement and Ethics Policy were used by Frazier to prevent the disclosure of the confidential and proprietary information used by and available to Logrecco.

34.     In executing the Confidentiality and Non-Compete Agreement and Ethics Policy, Logrecco expressly acknowledged Frazier's interest and intent to protect its confidential and proprietary information from unauthorized disclosure to and/or use by others, including but not limited to its "trade secrets, know-how or other Confidential Information relating to or concerning Frazier's financial condition, operations, sales, business and affairs, including information with respect to bids, internal costs, plans, strategies, employees, suppliers, customers or prospective customers, manufacturing processes or procedures, formulas, machinery, devices or materials of Frazier."

BE:9860807.1/OLI045-274718

35.     Specifically, Paragraph 1 of the Confidentiality and Non-Compete Agreement executed by Logrecco requires:

> You will, during your employment and at all times thereafter, hold secret and confidential all inventions, trade secrets, and confidential information relating to the Company's business, including but not limited to, patentable or un-patentable inventions, engineering, fabrication and design drawings, manufacturing techniques and processes, research and development data and activities, marketing and sales plans, sales and financial data, pricing formulas, customer and prospective customer names and data, and employee names and related information (collectively "Confidential Information"). You will not at any time during your employment or thereafter reveal or make any commercial or business use of such Confidential Information, directly or indirectly, either for yourself or for any other person, firm or corporation, except for the benefit of the Company or as specifically authorized by the Company in writing. Nothing contained herein in intended to prevent you from making proper use of you[r] general business or professional experience gained during your employment with the Company.

36.     The Confidentiality and Non-Compete Agreement, among other provisions, precludes Logrecco from working for a competitor of Frazier for one (1) year subsequent to the termination of his employment.

37.     Paragraph 4 of the Confidentiality and Non-Compete Agreement executed by Logrecco provides:

> In order to ensure that Confidential Information and Inventions are not used or disclosed in violation of this Agreement, you agree that during the terms of this Agreement, and for one (1) year after termination of the Agreement, you shall not, directly or indirectly as an employee, representative, consultant, officer, director, stockholder, owner partner, associate or otherwise, (i) become affiliated with any corporation, business entity or person, engaged in the rack system business or other business competitive with the Company in the United States, Canada or any other country in which the Company

-10-

conducts business or (ii) sell or promote any rack system or other product competitive with the Company's product or render any sales, engineering, design, strategic planning, marketing or other service for any other corporation, business entity or person competitive with the Company in the United States, Canada or any other country in which the Company conducts business.

38.     Paragraph 5 of the Confidentiality and Non-Compete Agreement executed by Logrecco provides:

On termination of your employment for any reason whatsoever, you will deliver to the Company or its authorized representatives all documents, plans drawings, or papers in any way relating to or connected with the affairs of [Frazier], or of any person, firm or corporation associated with [Frazier], which may be in your possession or control.

39.     Logrecco also expressly acknowledged that in the event of a breach (or threat of a breach) of Logrecco, Frazier may obtain injunctive relief because there is no adequate remedy at law.

40.     Paragraph 6 of the Confidentiality and Non-Compete Agreement provides as follows:

You acknowledge that, in the event of a breach, or the threat of a breach, by you of the provisions of this Agreement, damages would be an inadequate remedy and that the Company shall be entitled, in addition to any other right or remedy available to it at law or in equity, to an injunction, without the posting of any bond or other security, enjoining or restraining you from any violation or threatened violation of this Agreement and you hereby consent to the issuance of such injunction.

BE:9860807.1/OLI045-274718

41.     Frazier's Ethics Policy also precludes Logrecco from:

> . . . reveal[ing] or disclos[ing] to outsiders [Frazier's] trade secrets, know-how or other information related to or concerned with [Frazier's] financial condition, operations, sales, business and affairs (including information with respect to bids, internal costs, plans, strategies, employees, suppliers, customers or prospective customers, manufacturing processes or procedures, formulas, machinery, devices or materials of [Frazier]) (collectively "confidential information") . . .

### III.   Logrecco's Misappropriation of Frazier Property

42.     On April 30, 2018, Logrecco provided notice of his resignation from his employment with Frazier.

43.     Upon further investigation and discovery, the next day, on May 1, 2018, Logrecco created a back-up of the hard drive of his Frazier issued laptop.

44.     Prior to his resignation, on May 15, 2018, Frazier wrote to Logrecco and advised him of his responsibilities under the Confidentiality and Non-Compete Agreement and the Ethics Policy.  Specifically, Frazier advised him that he is required to "hold secret and confidential all inventions, trade secrets, and confidential information related to [Frazier's] business."  Frazier also advised him that for a period of one (1) year, he is prohibited from becoming affiliated with any company "engaged in the rack system or other business competitive with [Frazier]." Attached as "Exhibit E" is a true copy of a May 15, 2018 correspondence to Logrecco.

45.     Additionally, Frazier reminded Logrecco of his obligation to return to Frazier any and all Frazier company property in his possession, including without limitation, any Frazier confidential information.  The correspondence included a "Checklist of Items to be Returned to Frazier," a standard Frazier form required from all separated employees.  To date, Logrecco has not provided Frazier with the "Checklist of Items to be Returned to Frazier."

-12-

46.     Frazier recently learned that, on the next day, May 16, 2018, Logrecco used a USB storage device to save and/or access files, including the back-up file, on his Frazier issued laptop.

47.     Frazier also recently learned that, on May 17, 2018, one day before his last day of work, Logrecco used a second USB storage device to save and/or access files, including the back-up file, on his Frazier issued laptop.

48.     Although not disclosed to Frazier prior to his resignation, Frazier subsequently learned that Logrecco had accepted a position as project manager with a national competitor of Frazier, Defendant REB.

49.     REB is an integrator of racking systems and storage handling solutions.  Frazier has worked with integrators similar to REB.  An integrator, such as REB, provides the same products to the same customers as Frazier but through third parties.  The only difference is that REB, as an integrator and not a manufacturer, will shop the manufacturer of the rack system to obtain the best price and system for a given customer.  Since REB does not manufacture the rack system, it can use the confidential and proprietary information obtained by Logrecco to undercut Frazier's prices because Logrecco has Frazier's material costs, vendor lists, margin information, labor costs and manpower requirements.  REB can also use Logrecco's contact information to unfairly solicit customers.

50.     According to its website, REB specializes in the "design, engineering, sales, and installation of storage systems and material handling products for warehouses, distribution centers, manufacturing facilities, records storage environments and other companies with storage needs."  Also, according to its website, REB has branch offices/facilities throughout the country, except for Nevada.  Its website touts the ability to service "companies on a local, national, and

international scale."  Attached as "Exhibit F" are true copies of REB's website which lists its offices and capabilities.   Thus, they can unfairly compete with Frazier through Logrecco.

51.     REB's website also lists Logrecco as one of its project managers, highlighting his specialization in material handling systems, *i.e.*, Frazier's business.  As project manager for REB, Logrecco will be responsible for the same tasks and duties he performed while at Frazier. Logrecco will manage a project, interface with customers, address and implement lead times, etc., the same things he did for Frazier for over six (6) years.

52.     Logrecco in performing his project management functions and duties at REB will inevitably make use of Frazier's confidential and proprietary information.  Logrecco's access and use of Frazier's proprietary information is extremely valuable to REB, who retains companies who are direct competitors of Frazier and use this information to unfairly chip away at Frazier's share of the market.  It is for this explicit reason that Frazier required Logrecco to execute the Confidentiality and Non-Compete Agreement, which he has now violated.

53.     Due to his extensive experience in construction, Logrecco can obtain employment as a project manager in that industry or he can obtain employment in other areas of the material handling industry not tied to racking supply, such as working on the conveyer side of the industry, lift truck supplies or any other aspect of the extensive material handling industry.

54.     Thus, it is apparent that Logrecco was hired by REB to expand REB's national business, by taking advantage of the confidential information and other proprietary information that Logrecco learned while at Frazier, such as Frazier's lead time processes and knowledge of Frazier's customers' needs and exactly how Frazier provides material handling solutions to those customers.  Frazier's confidential and proprietary information may now be in REB's possession,

including customer information, designs and specifications, as a result of Logrecco's actions as set forth herein.

55.     As a result, Frazier wrote to Logrecco again on May 25, 2018.  This time Frazier advised Logrecco that REB is a competitor of Frazier's and, as a result, Logrecco was in breach of his obligations to Frazier under the Confidentiality and Non-Compete Agreement.  Attached as "Exhibit G" is a true copy of a May 25, 2018 correspondence to Logrecco.

56.     Subsequently, after receiving no response from Logrecco, on or about June 1, 2018, Frazier wrote to Thomas E. Lesko, REB's chief executive officer, to advise REB of Logrecco's Confidentiality and Non-Compete Agreement and to demand that REB cease and desist from employing Logrecco in light of Logrecco's breach of the Confidentiality and Non-Compete Agreement.  Attached as "Exhibit H" is a true copy of a June 1, 2018 correspondence to REB.

57.     On or about June 5, 2018, Mr. Lesko responded to Frazier's correspondence and simply indicated that he agreed as to what he considers to be "ethical business practices within the[] industry" and that he instructed REB's employees to refrain from any communication with Frazier employees.   Attached as "Exhibit I" is a true copy of REB's June 5, 2018 correspondence.

58.     On or about July 19, 2018, Frazier's computer forensics expert performed a forensic image and analysis of Logrecco's Frazier issued laptop which revealed, *inter alia*, that the day before he resigned from his employment with Frazier, Logrecco created a back-up of his Frazier issued laptop's hard drive and that just before his last day of work for Frazier, he used two (2) USB storage devices to save, access and/or copy files on the laptop, including the back-up he created.

59.     Demand was immediately made upon Logrecco, through his counsel, to return the two (2) USB storage devices, and any other Frazier property or information that remains in Logrecco's possession on or before August 3, 2018.  See Ex. A.

60.     Demand was also made upon REB, through its counsel, to confirm on or before August 3, 2018 that: (1) REB is not in possession of any Frazier documents or information, in any way, learned acquired, developed or created by reason of Logrecco's employment with REB; and (2) Logrecco has not saved any Frazier documents or information on any REB server, computer or device.  See Ex. B.

61.     Neither Logrecco nor REB has responded, in any manner, to Frazier's demands.

62.     Logrecco's actions are in violation the Confidentiality and Non-Compete Agreement which required Logrecco to return all Frazier documents and information in his possession or control and are in violation of federal and state law.

63.     Since that time, on several occasions, Frazier has reiterated its demand that Defendants abide by Logrecco's Confidentiality and Non-Compete Agreement and also that Defendants return all Frazier property and/or provide assurances that they are not in possession of Frazier property.  To date, neither REB nor Logrecco have responded to these demands and Logrecco remains employed by REB.

64.     Based on the foregoing, Frazier believes that Logrecco's hiring demonstrates calculated and systematic actions to gain a competitive advantage over Frazier, intended to unfairly injure Frazier's business.  Frazier has suffered irreparable harm and unless the Court intervenes, Frazier will continue to be irreparably harmed.

BE:9860807.1/OLI045-274718

## COUNT ONE
### (Violation of Restrictive Covenant - Breach of Contract)

65.     Frazier repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

66.     The Confidentiality and Non-Compete Agreement executed by Logrecco expressly precludes him from accepting employment with a competitor of Frazier, such as REB, during its term and for one (1) year thereafter.

67.     In breach of the Confidentiality and Non-Compete Agreement and Ethics Policy, Logrecco is now employed as a project manager for REB, a competitor of Frazier, performing the same duties he performed while working for Frazier.

68.     The Confidentiality and Non-Compete Agreement is valid and enforceable. Specifically, the non-competition provision of the Confidentiality and Non-Compete Agreement is reasonable and necessary to protect Frazier's legitimate business interests, and the Confidentiality and Non-Compete Agreement is supported by consideration.

69.     By his actions described above, Logrecco has breached his obligations to Frazier under the Confidentiality and Non-Compete Agreement.

70.     As a direct and proximate result of Logrecco's breach of the Confidentiality and Non-Compete Agreement, Frazier has suffered and will continue to suffer irreparable injury since there is no adequate remedy at law.

## COUNT TWO
### (Breach of Implied Covenant of Good Faith and Fair Dealing)

71.     Frazier repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

72.     The Confidentiality and Non-Compete Agreement and Ethics Policy between Logrecco and Frazier contains an implied covenant of good faith and fair dealing.

73.     At all times relevant hereto, Frazier acted in good faith, and yet Logrecco failed to act in good faith, as referenced herein.

74.     By his actions described herein, Logrecco breached the covenant of good faith and fair dealing.

75.     As a direct and proximate result of these actual breaches of the covenant of good faith and fair dealing, and the threat of other potential breaches of the covenant by Logrecco, Frazier has suffered and will continue to suffer irreparable harm.

## COUNT THREE
### (Breach of Duty of Employee Loyalty)

76.     Frazier repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

77.     As an employee of Frazier, Logrecco was entrusted by Frazier with access to its confidential and proprietary information, Logrecco owed a duty of loyalty to Frazier and a duty not to use or disclose confidential business information belonging to Frazier.

78.     As a result of Logrecco's unlawful conduct, he has breached his duty of loyalty and duty not to misappropriate, use or disclose confidential business information belonging to Frazier.

79.     Logrecco is now employed by a competitor of Frazier.  By this conduct, Logrecco abused his trust, acted contrary to the legitimate business interests of Frazier, thereby breaching his duty of loyalty owed to Frazier.

## COUNT FOUR
### (Unfair Competition)

80.     Frazier repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

BE:9860807.1/OLI045-274718

81.    The acts of the Defendants constitute actionable unfair competition and, as a result of such conduct, Frazier has suffered and will continue to suffer irreparable harm.

## COUNT FIVE
### (Civil Conspiracy)

82.    Frazier repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

83.    Defendants have conspired to wrongfully and unlawfully cause harm to Frazier.

84.    As a result thereof, Defendants' actions have caused and continue to cause Frazier immediate and irreparable harm.

## COUNT SIX
### (Aiding and Abetting – REB)

85.    Frazier repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

86.    Defendant REB had actual knowledge of Logrecco's Confidentiality and Non-Compete Agreement.  In addition, Defendant REB has failed and refused to return to Frazier all Frazier property, including its confidential and proprietary information.

87.    Notwithstanding, Defendant REB actively participated in, acquiesced in, aided, abetted, helped to facilitate, helped to promote, was generally aware of its role as part of, otherwise acted to knowingly and substantially to assist in said violations of Logrecco and failed to prevent these actions.

## COUNT SEVEN
### (Individual Liability – John Does, 1-10)

88.    Frazier repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

-19-

89.     Defendants John Does, 1-10, are officers, directors or shareholders of Defendant REB who intentionally and wrongfully directed, encouraged, and were responsible for the wrongful actions of Logrecco as described herein.

90.     As a result of these actions, Frazier has and continues to continue to cause Frazier immediate and irreparable harm.

## COUNT EIGHT
### (Misappropriation)

91.     Frazier repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

92.     Information regarding, *inter alia,* Frazier's customer contacts, specific customer buying habits and needs, pricing and estimating strategies, along with specific knowledge related to Frazier's design and manufacturing processes and techniques constitute confidential and proprietary information entitled to protection and are also trade secrets.

93.     Frazier's confidential and proprietary information and trade secrets are, and should be, known only to Frazier and are sufficiently secret to have economic value.

94.     Frazier has expended significant financial and other resources in developing its confidential, proprietary, and trade secret information, all of which is extremely valuable to Frazier.  In addition, Frazier has gone to great lengths and expense to maintain the integrity, secrecy, and confidentiality of its trade secrets and proprietary information.

95.     Logrecco was made aware and knew that the use, misappropriation or disclosure of Frazier's confidential and proprietary information and trade secrets for any purpose other than for the benefit of Frazier was prohibited.

96.     By reason of Logrecco's former employment with Frazier, he has gained and possesses an intimate familiarity with and understanding of Frazier's confidential and proprietary information and trade secrets.

97.     By Logrecco's actions as described above, Logrecco accessed and copied Frazier's confidential and proprietary information and trade secrets, without Frazier's express or implied consent, and in violation of common law obligations to Frazier, which may also be in REB's possession, custody or control.

98.     Additionally, during his employment with REB, it is inevitable that if he has not already done so, Logrecco will disclose or use Frazier's confidential, proprietary and/or trade secret information learned from Frazier, for Defendants' benefit, regardless of his intent.

99.     Defendants have or will inevitably misappropriate and/or disclose Frazier's confidential, proprietary and trade secret information for their benefit, without Frazier's express or implied consent, and in violation of their common law obligations to Frazier

100.    Frazier has suffered and will inevitably suffer irreparable injury as direct and proximate result of Logrecco's actions.

**COUNT NINE**
**(Violation of the New Jersey Trade Secrets Act, N.J.S.A. 56:15-1, et seq.)**

101.    Frazier repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

102.    Frazier's customer contacts, specific customer buying habits and needs, pricing and estimating strategies, along with specific knowledge related to Frazier's design and manufacturing processes and techniques are trade secrets and constitute proprietary and confidential information entitled to protection.  This information constitutes a trade secret because it is not generally known to others and is not readily ascertainable by proper means by

competitors, who can obtain economic value by using it to undercut Frazier's prices and take business away from Frazier.

103.    Frazier has taken reasonable measures to protect the confidentiality of its trade secret information, by among other things, requiring its employees with access to such information to enter into an agreement not to disclose such information.  The Confidentiality and Non-Compete Agreement and Ethics Policy executed by Logrecco are examples of such agreements.

104.    Defendants have or will inevitably misappropriate and/or disclose Frazier's confidential, proprietary and trade secret information for their benefit, which misappropriation and disclosure will be willful since Defendants have express knowledge of Logrecco's Confidentiality and Non-Compete Agreement.

105.    By reason of the acts and omissions as alleged herein, Frazier has and will continue to suffer irreparable harm.

## COUNT TEN
### (Violation of the Computer Related Offenses Act, N.J.S.A. 2A:38A-1, et seq.)

106.    Frazier repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

107.    Logrecco knowingly, purposefully and/or recklessly and without authorization accessed and purloined Frazier's computer data and confidential information.

108.    Logrecco unlawfully and improperly took Frazier's computer data and files, without Frazier's knowledge or consent.

109.    Logrecco unlawfully copied and retained Frazier's computer data and confidential information without Frazier's knowledge or consent.

BE:9860807.1/OLI045-274718

110.    Logrecco failed to protect and preserve Frazier's confidential and proprietary data and information obtained during the course of his employment with Frazier.

111.    By virtue of the acts and omissions as set forth herein, Defendants have violated N.J.S.A. 2A:38A-1, et seq., the Computer Related Offenses Act.

112.    As a result, Frazier has and will continue to suffer irreparable harm.

**COUNT ELEVEN**
**(Conversion)**

113.    Frazier repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

114.    Logrecco has converted for his own use and for the benefit of himself the property and assets of Frazier, thereby causing Frazier irreparable harm.

**COUNT TWELVE**
**(Unjust Enrichment)**

115.    Frazier repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

116.    Alternatively, Logrecco received benefits at Frazier's expense, in the form of Frazier's confidential and proprietary information, to which Logrecco was not and is not legally entitled.

117.    Under the circumstances, allowing Logrecco to retain those benefits would be unjust.

118.    Frazier has no adequate remedy at law for the recovery of the above-referenced benefits from Logrecco.

WHEREFORE, Frazier demands judgment against Defendants Logrecco and REB, jointly and severally, as follows:

BE:9860807.1/OLI045-274718

A.     An Order permanently restraining Logrecco from employment with REB and directing REB to cease employing Logrecco in accordance with the post-employment restrictive covenant.

B.     An Order permanently restraining the Defendants, their agents, servants and employees and all others acting in concert or participating with them, from soliciting business from or doing business with, directly or indirectly, any past, present or prospective customer of Frazier;

C.     An Order permanently restraining Defendants, their agents, or anyone acting in concert with them from publishing, releasing, disclosing or using any trade secrets or confidential, private or proprietary information of Frazier which Logrecco in any way acquired, learned, developed, or created by reason of Logrecco's employment with Frazier

D.     An Order permanently restraining Logrecco, his agents, employees and/or any person acting in concert with him, for a period of at least one year, from taking or accepting employment with or otherwise rendering any services to a competitor of Frazier including, but not limited to, REB, or any other company engaged in the selling of a product or service which resembles or competes with any of the products or services of Frazier, in a position that threatens Frazier's legitimate business interests in preserving its good will with its customers and the confidentiality of its confidential information;

E.     Compelling Logrecco and REB to immediately return to Frazier all originals and all copies, electronic or otherwise, of all Frazier's confidential, proprietary, or trade secret information in his possession, custody, or control or in the possession, custody or control of his agents or representatives, including but not limited to, a Kingston DataTraveler SE9 USB Device and a WD 2500BMV External USB Device.

F.      Compelling Defendant Logrecco to (i) account for any documents and information that he sent from his Frazier e-mail account to his personal e-mail account, and that he otherwise removed from any Frazier device or file; (ii) identify all electronic transmissions or physical deliveries of any Frazier information and documents that he may have made to any recipient either directly or indirectly before or after his departure from his employment with Frazier, and (iii) certify in writing and under the pains and penalties of perjury, after returning the information described above to Frazier, that all paper copies and all copies maintained in electronic format or on any electronic device, of any Frazier confidential, proprietary, or trade secret information in his possession, custody, or control have been returned to Frazier, and that all electronic copies of any such information have been permanently deleted and/or destroyed from his email account or any other location where they have been or are currently stored;

G.      Compelling Defendant REB to (i) identify all electronic transmissions and physical deliveries of any Frazier information and documents by Logrecco either directly or indirectly at any time; (ii) account for all electronic transmissions and physical deliveries of all information and documents in electronic format or otherwise brought to, transmitted by and delivered by Logrecco to REB, including an account of all electronic transmissions made or delivered by Logrecco, directly or indirectly; and  (iii) certify in writing and under the pains and penalties of perjury, after accounting for and returning the information described above to Frazier, that all paper copies and all copies maintained in electronic format or on any electronic device, of any Frazier confidential, proprietary, or trade secret information in Defendants' possession, custody, or control have been returned to Frazier, and that all electronic copies of any such information have been permanently deleted and/or destroyed from Defendants' possession, custody and/or control and all locations where they have been or are currently stored;

BE:9860807.1/OLI045-274718

H.      Permitting Frazier (i) to have access to and examine (at Defendants' expense) any and all computers, flash drives, smartphones, printers, cell phones, and other devices capable of storing or transmitting electronic data in Defendants' possession, custody, or control, including but not limed to, Logrecco's personal devices and any such devices issued to them for their use by REB, to confirm that REB is no longer in possession of any Frazier confidential, proprietary, or trade secret information, (ii) to create a list of all electronic transmissions or physical deliveries of any Frazier information and documents that Logrecco made to any recipient (referred to elsewhere in this Paragraph as "Recipients") either before or after his departure from his employment with Frazier, and (iii) to have access to and examine (at Defendants' expense) any and all computers, computer servers, flash drives, smartphones, printers, cell phones, and other devices capable of storing or transmitting electronic data in the possession, custody, or control of all Recipients, including any such devices issued to each Recipient for his use by Logrecco;

I.      Entering judgment in Frazier's favor on each cause of action set forth above;

J.      Awarding Frazier compensatory and consequential damages, including lost profits, punitive damages, exemplary damages, litigation and investigation expenses, including, but not limited to, attorneys' fees, and costs; and

K.      Awarding Frazier such other and further relief as the Court may deem just and appropriate.

BE:9860807.1/OLI045-274718

Dated: August 7, 2018     **BRACH EICHLER LLC**

         s/ Rosaria A. Suriano
         Rosaria A. Suriano, Esq.
         Mark A. Fantin, Esq.
         101 Eisenhower Parkway
         Roseland, New Jersey 07068
         (973) 228-5700 * Fax (973) 618-5951
         *Attorneys for Plaintiff*
         *Frazier Industrial Company*

## **CERTIFICATION**

Pursuant to *L. Civ. R.* 11.1, the undersigned hereby certifies that the matters raised herein are not the subject of any other pending lawsuit, arbitration, or administrative proceeding pending in any other court.

Dated: August 7, 2018       s/ Rosaria A. Suriano
             Rosaria A. Suriano

-27-

# EXHIBIT A



# BRACH|EICHLERᴸᴸᶜ

Rosaria A. Suriano
Direct Dial: 973-403-3129
Direct Fax: 973-618-5951
E-mail: rsuriano@bracheichler.com

August 1, 2018

**VIA E-MAIL [JMJ@SPSK.COM]**

Joseph Maddaloni, Jr., Esq.
Schenck, Price, Smith & King, LLP
220 Park Avenue
Park Place
Florham Park, New Jersey  07932

        Re:    **Frazier Industrial Company v. Nicklaus M. Logrecco, et al.**
              **Docket No.: MRS-C-68-18**

Dear Mr. Maddaloni:

As you know, we represent the Plaintiff Frazier Industrial Company ("Frazier") in the above matter.  We have performed a forensic inspection of your client Nicklaus M. Logrecco's ("Logrecco") Frazier issued laptop and have determined that Logrecco is in possession of certain Frazier documents and information, which must be returned immediately.

The inspection revealed that Logrecco inserted two (2) different USB storage devices (the "USB Devices") in to his Frazier laptop on May 16 and 17, 2018, just days before he resigned from his position with Frazier on May 18, 2018.  The first device, a Kingston DataTraveler SE9 USB Device, is a thumb drive  and the second device, a WD 2500BMV External USB Device, is an external hard drive which typically provides a significantly larger amount of storage than a thumb drive.  Additionally, the day after Logrecco provided notice to Frazier of his resignation, Logrecco created what appears to be a back-up of his entire hard drive and saved it to one or both of the USB storage devices.

Logrecco's actions constitute, among other claims, misappropriation and conversion and are in violation of the New Jersey Trade Secrets Act and the Computer Related Offenses Act. Additionally, Logrecco is in violation of Frazier's company policy which required him to return all of Frazier's property upon his separation of employment.  Logrecco's possession of a multitude of sensitive Frazier documents and information poses an immediate risk of harm to Frazier's business.  Thus, please produce the two (2) USB storage devices, and any other Frazier property or information that remains in Logrecco's possession, to our office by close of business this Friday, August 3, 2018 so that Frazier may determine the extent and scope of Logrecco's misappropriation of Frazier's property.

5 Penn Plaza, 23rd Floor
New York, New York 10001
212.896.3974

101 Eisenhower Parkway
Roseland, New Jersey 07068
973.228.5700

2875 South Ocean Blvd., Suite 200
Palm Beach, Florida 33480
561.899.0177

BE:9857928.1/OLI045-274718

www.bracheichler.com

Joseph Maddaloni, Jr., Esq.
August 1, 2018
Page 2

Should you have any questions, please contact me.

Very truly yours,

Rosaria A. Suriano
For BRACH EICHLER L.L.C.

RAS/mkb
cc:     Thomas O. Johnston, Esq. (Via E-Mail)

# EXHIBIT B



Rosaria A. Suriano
Direct Dial: 973-403-3129
Direct Fax: 973-618-5951
E-mail: rsuriano@bracheichler.com

August 1, 2018

**VIA E-MAIL [TJOHNSTON@JOHNSTONLAWFIRMLLC.COM]**

Thomas O. Johnston, Esq.
Johnston Law Firm
75 Midland Avenue, Suite 1
Montclair, New Jersey 07042

Re:   **Frazier Industrial Company v. Nicklaus M. Logrecco, et al.**
       **Docket No.: MRS-C-68-18**

Dear Mr. Johnston:

As you know, we represent the Plaintiff Frazier Industrial Company ("Frazier") in the above matter. As you also know, the results of our forensic inspection of Nicklaus M. Logrecco's ("Logrecco") Frazier issued laptop has revealed that Logrecco is in possession of certain Frazier documents and information and that we have demanded the immediate return of this Frazier property.

Please confirm in writing by close of business this Friday, August 3, 2018, that REB Steel Equipment Corp. d/b/a REB Storage Systems International ("REB") is not in possession of any Frazier documents and/or information, in any way acquired, learned, developed, or created by reason of Logrecco's employment with Frazier. Specifically, please confirm that Logrecco has not saved any Frazier information on any REB server, computer or device.

Should you have any questions, please contact me.

Very truly yours,

Rosaria A. Suriano
For BRACH EICHLER L.L.C.

RAS/mkb
cc:   Joseph Maddaloni, Jr., Esq. (Via E-Mail)

5 Penn Plaza, 23rd Floor
New York, New York 10001
212.896.3974

101 Eisenhower Parkway
Roseland, New Jersey 07068
973.228.5700

2875 South Ocean Blvd., Suite 200
Palm Beach, Florida 33480
561.899.0177

BE:9858258.1/OLI045-274718

www.bracheichler.com

# EXHIBIT C

## CONFIDENTIALITY, INVENTION AND NON-COMPETE AGREEMENT

Dear

This Confidentiality, Invention and Non-Compete Agreement (the "Agreement") supplements the Employment Agreement dated                    you executed with Frazier Industrial Company.

During the course of your employment with Frazier Industrial Company or any of its subsidiaries or affiliates (collectively referred to as the "Company"), you will have access to or may develop trade secrets and confidential information relating to the Company's business, the use or disclosure of which could cause injury to the Company.  You may also, as a result of your access to such trade secrets and confidential information and other information relating to the Company's business, conceive various inventions or discoveries.  Therefore, in consideration of your employment with the Company, you agree to do the following:

1.      You will, during your employment and at all times thereafter, hold secret and confidential all inventions, trade secrets, and confidential information relating to the Company's business, including but not limited to, patentable or unpatentable inventions, engineering, fabrication and design drawings, manufacturing techniques and processes, research and development data and activities, marketing and sales plans, sales and financial data, pricing formulas, customer and prospective customer names and data, and employee names and related information (collectively "Confidential Information").  You will not at any time during your employment or thereafter reveal or make any commercial or business use of such Confidential Information, directly or indirectly, either for yourself or for any other person, firm or corporation, except for the benefit of the Company or as specifically authorized by the Company in writing.  Nothing contained herein in intended to prevent you from making proper use of you general business or professional experience gained during your employment with the Company.

2.      All inventions, discoveries, improvements, processes, methods, prescriptions, developments, devices or formulas ("Inventions") discovered, originated, conceived, invented, developed, completed or devised by you or anyone under your supervision, either solely or jointly with others, at any time while you are an employee, whether or not during business hours, which in any way relate to the Company's business or which result from or are suggested by any work done by you for the Company or at the request of the Company shall immediately become and remain the Company's sole, exclusive and absolute property without compensation to you from the Company (other than payment of your regular salary, wages, or commissions during the period of your employment).  You agree to inform the Company promptly of such Inventions and to execute, at the Company's request and sole expense, any applications, including patent applications, powers of attorney, instruments, assignments and all other documents, which the Company deems necessary to carry out effectively the purposes of this Paragraph 2.  Your obligations under this Paragraph 2 shall be binding upon your assigns, heirs and legal representatives.

3.      You will keep and maintain adequate and current written records of all Inventions referred to in Paragraph 2, at all stages thereof, which records shall become and remain the property of and be available to the Company at all times.

4.     In order to ensure that Confidential Information and Inventions are not used or disclosed in violation of this Agreement, you agree that during the terms of this Agreement and for one (1) year after termination of the Agreement, you shall not, directly or indirectly as an employee, representative, consultant, officer, director, stockholder, owner partner, associate or otherwise, (i) become affiliated with any corporation, business entity or person engaged in the rack system business or other business competitive with the Company in the United States, Canada or any other country in which the Company conducts business or (ii) sell or promote any rack system or other product competitive with the Company's product or render any sales, engineering, design, strategic planning, marketing or other service for any other corporation, business entity or person competitive with the Company in the United States, Canada or any other country in which the Company conducts business.

5.     On the termination of your employment for any reason whatsoever, you will deliver up to the Company or its authorized representatives all documents, plans drawings, or papers in any way relating to or connected with the affairs of the Company, or of any person, firm or corporation associated with the Company, which may be in your possession or control.

6.     You acknowledge that, in the event of a breach, or the threat of a breach, by you of the provisions of this Agreement, damages would be an inadequate remedy and that the Company shall be entitled, in addition to any other right or remedy available to it at law or in equity, to an injunction, without the posting of any bond or other security, enjoining or restraining you from any violation or threatened violation of this Agreement and you hereby consent to the issuance of such injunction.

7.     You represent and warrant that you are not a party to any contract, agreement, or understanding, which prevents or prohibits you in any way from entering into or performing this Agreement or from being employed by the Company.

_Chilleus M. Toggacus_      _12/04/12_

AGREED TO AND ACCEPTED      DATE

# EXHIBIT D

## FRAZIER CONFLICT OF INTEREST AND ETHICS POLICY

<u>Policy, Guiding Principles, Requirements and Prohibitions</u>: *N.H.L.*

This sets forth the Policy, Guiding Principles, Requirements and Prohibitions ("Policy") of Frazier Industrial Company and its affiliates (collectively the "Company" or "Frazier") and is applicable to all officers, managers, and other employees (collectively the "Employees") of the Company.

**Frazier's Policy is to conduct its business in compliance with the highest principles of business ethics and with all applicable laws and regulations. All Employees are required to perform their services legally, honestly, ethically, and diligently, acting in the best interests of the Company, without conflicts of interest that could unduly or improperly influence them, and in compliance with the specific provisions hereof.**

## <u>Conflicts of Interest</u> *N.H.L.*

Employees are prohibited from entering into or continuing any interest, relationship or activity that creates an actual or potential conflict of interest with the Company; and unless such situation is reported to and specifically approved in writing by the President, such interest, relationship, or activity must be avoided and/or must cease. In general, a conflict of interest prohibited by this policy is any interest, relationship or activity of an Employee or his or her family a) which adversely affects or could adversely affect the Employee's diligent, independent, lawful, honest, or ethical performance of services for the Company, b) which may cause the Employee to place his or her personal, family or financial interest over that of the Company's interests, or c) which may otherwise be incompatible with the best interests of the Company.

<u>Prohibitions</u>: Prohibited Employee conflicts of interest include, but are not limited to: *N.H.L.*

(1) Owning, directly or indirectly, any interest in or serving as a director, officer, employee, partner, consultant, agent or representative of any person, firm, company or business that is a present or potential supplier, vendor, contractor, consultant, customer or competitor of the Company.

(2) Having any personal, family or financial interest in, being employed by, borrowing from or lending to, or accepting any remuneration, compensation or fees from any person, firm, company or business with whom or which the Company does business or maintains, plans, or intends to establish any business relationship (including suppliers, vendors, contractors, consultants, or customers), or with whom or with which the Company competes, directly or indirectly.

(3) Receiving, directly or indirectly, from any person, firm, company or business described in the above subparagraphs (1) or (2) gifts, entertainment, personal favors, payments, or other benefits not generally available to the public that are of

C:\Users\mlogrecco\AppData\Local\Microsoft\Windows\Temporary Internet Files\Content.Outlook\DPJ5CZRJ\Ethics CONFLICT OF INTEREST.docx

1

material value, i.e., more than One Hundred Dollars ($100) in value per year per company/business or that may constitute or cause undue influence or otherwise be improper or embarrassing to the Company. This normally would not prohibit an Employee's receipt of seasonal gifts consistent with the customary practice in the industry not exceeding One Hundred Dollars ($100) in value per year per company/business.

(4) Having any other direct or indirect personal, family or financial interest in a transaction or proposed transaction (such as a purchase, sale, lease, loan or otherwise) involving the Company or failing to disclose such interest.

(5) Using for his or her personal, family or financial benefit trade secrets or other confidential or proprietary information regarding the Company or its business.

(6) Appropriating or acquiring for his or her personal or family benefit any business, real estate, tangible or intangible property or other business asset or opportunity which is known or believed to be of interest to the Company or which the Company might reasonably have an interest in acquiring or pursuing, without first making the business asset or opportunity available to the Company.

(7) Engaging in outside activities or actions that detract from or interfere with the timely, effective, diligent and efficient performance by an Employee of his or her services for the Company or which may adversely affect the Company or its reputation.

### Required Disclosure of Conflicts: _N.M.L._

Each Employee shall promptly and completely disclose to the President in writing any personal, family, financial or other interest which is specifically prohibited by this Policy or which may be perceived as a potential or actual conflict of interest. It is difficult for the Company to describe all of the circumstances and conditions that might create a conflict of interest; therefore, if you think or believe that there may be a conflict of interest or that any contemplated interest, action or activity might fall within the prohibitions of this Policy, you must disclose the facts to the President or the General Manager and obtain his or her written approval before engaging in such interest, action or activity.

In rare circumstances, exceptions for interests, actions or activities which appear to be conflicts but are intended to and likely to benefit the Company may be authorized following the Employee's full disclosure in writing to the President and/or to General Manager and receipt of the written consent from him or her.

### Other Ethical Requirements and Prohibitions _N.M.L._

1) No Employee shall make, create or use any false or artificial documents or entry in the books or records of the Company. The books and records of the Company shall accurately, honestly, fairly and in reasonable detail, reflect the transactions, dispositions, and use of cash and other assets of the Company.

C:\Users\nlogreco0\AppData\Local\Microsoft\Windows\Temporary Internet Files\Content.Outlook\DPI5CZR3\Ethics CONFLICT OF INTEREST.docx

2

2) No Employee shall approve, make or receive on behalf of the Company any payment with the intention or understanding that any part of such payment is to be used for any improper or unlawful purpose or any purpose other than that described by the documents authorizing or supporting the payment. This normally would not prohibit gifts or entertainment provided to any person, firm, company or business as customary practice in the industry, not of significant value and not intended to unduly or improperly influence the recipient's decisions or conduct.

3) Employees shall promote the Company's best interests of purchasing materials, supplies, goods and services at the lowest feasible cost consistent with quality, timing, delivery, contractual, and other applicable requirements.

4) No Employee shall reveal or disclose to outsiders the Company's trade secrets, know-how or other information relating to or concerned with the Company's financial condition, operations, sales, business and affairs (including information with respect to bids, internal costs, plans, strategies, employees, suppliers, customers or prospective customers, manufacturing processes or procedures, formulas, machinery, devices or materials of the Company) (collectively "confidential information"), except as reasonably needed for a proper purpose and with proper precautions. Any disclosure not routinely required and authorized to perform the Employee's job requires the prior written authorization by the President, or General Manager or other Company management.

5) No Employee shall use or disclose to the Company any trade secrets or confidential information of any former employer or other person or entity with whom such Employee has obligations of confidentiality. No Employee shall improperly use or authorize the use of any patented inventions or proprietary information of any other person or entity.

6) No Employee shall initiate, authorize, condone or approve any form of illegal or prohibited employment, discrimination, including sexual or other improper harassment of employees or others, or other prohibited employment practice.

7) No Employee shall agree or discuss with competitors or their employees or agents the prices, costs, or sales of the Company's or the competitors' products or services.

8) No Employee shall engage in any conduct considered by the Employee or generally considered unethical, dishonest, deceptive, illegal, or contrary to the best interests of the Company.

9) Each Employee shall take necessary and appropriate actions to ensure his or her compliance with this Policy and to bring problems, concerns or violations of this Policy to the attention of the General Manager or President.

**VIOLATIONS OF THIS POLICY WILL RESULT IN APPROPRIATE DISCIPLINARY OR OTHER ACTION, INCLUDING DISCHARGE WITHOUT WARNING.** *N.M.L.*

C:\Users\infogreco\AppData\Local\Microsoft\Windows\Temporary Internet Files\Content.Outlook\DPI5CZR3\Ethics CONFLICT OF INTEREST.docx

3

## <u>Acknowledgement/Compliance Certification</u> *N. M. L.*

      I have read and am familiar with the Frazier Conflict of Interest and Ethics Policy and agree to abide by the Policy and the requirements and prohibitions set forth above. I represent that, to the best of my knowledge, information and belief, I do not have any prohibited conflicts of interest, am fully complying with this Policy and intend to comply with this Policy.

_Nicklaus M. Logreco_     _04/09/14_       _NICKLAUS M. LOGRECO_

Employee signature       Date             Employee name

C:\Users\nlogrecco\AppData\Local\Microsoft\Windows\Temporary Internet Files\Content.Outlook\DP15CZR3\Ethics CONFLICT OF INTEREST.docx

4

# EXHIBIT E



### I N D U S T R I A L   C O M P A N Y
91 Fairview Avenue, Long Valley, NJ  07853

William F. McEnroe                                                    Phone:  908-876-3001 Ext. 274
Vice President and General Counsel                      Fax:      908-876-1716
wmcenroe@frazier.com

May 15, 2018

*Via e-mail and Regular Mail*

Mr. Nicklaus Logrecco
1377 Grassland Road
Dayton, NV  89403

Dear Nick:

I am writing to you in my capacity as General Counsel for Frazier Industrial Company.

I have been advised that you will be leaving your position with Frazier and that your last day of
employment will be May 18, 2018.  Initially, on behalf of the Company, I want to thank you for your
service to Frazier and to wish you well in your future endeavors.  Another purpose of my letter is to
highlight certain provisions from the documents which you signed at the commencement of your
employment.

I understand that, on December 4, 2012, you accepted Frazier's offer of employment by signing an
Employment Offer Letter.   At that time, you also were provided with a copy of a Confidentiality,
Invention and Non-Compete Agreement, which you also signed on December 4, 2012.  Subsequently, on
April 4, 2014, you signed the Frazier Conflict of Interest & Ethics Policy. Among the requirements of
those documents are that:

      1.     During your employment and at all times thereafter, you will hold secret and
confidential all inventions, trade secrets and confidential information relating to the Company's business
including, without limitation, customer and prospective customer names and data (collectively
**"Confidential Information"**).

      2.     During the term of the Agreement and for one (1) year after termination of the
Agreement, you will not, directly or indirectly, associate or otherwise:  (i) become affiliated with any
corporation, business entity or person engaged in the rack system business or other business competitive
with the Company in the United States, Canada or any other country in which the Company conducts
business; or, (ii) sell or promote any rack system or other product competitive with the Company's
products or render any sales, engineering, design, strategic planning, marketing or other service to any
other corporation, business entity or person competitive with the Company.

May 15, 2018
Page 2
_____

It also is Frazier's policy and a requirement of the documents which you signed that any employee who terminates his or her employment relationship return all company property and confidential information which had been in the possession of the employee including any information which is on any computers utilized or owned by the employee.  As such, any and all property in your possession or control or otherwise belonging to Frazier should be returned to Frazier directed to the attention of Peter Goffredo, with any information contained on computers owned by you to be deleted.   For your convenience, a checklist of items to be returned is enclosed.  Please keep one copy of the checklist for your records and give a signed copy to Peter when you deliver the Frazier property.

I know from our work together and from your fellow employees that you have been a most conscientious and valued employee. All at Frazier are confident that you will respect your responsibilities to the Company and wish you the best of luck!

Please feel free to call me should you have any questions with regard to return of Company property or your obligations to the Company.

Thank you.

Very truly yours,

FRAZIER INDUSTRIAL COMPANY

BY:     WILLIAM F. McENROE

WFM: mb
cc:     Mr. Carlos P. Oliver, President
        Mr. Peter Goffredo
        Ms. Lisa LaGrasta



91 Fairview Avenue, Long Valley, NJ 07853 • Phone 908-876-3001 • Fax:  908-876-4539

5/15/2018

## CHECKLIST OF ITEMS TO BE RETURNED TO FRAZIER

May 15, 2018

The foregoing items have been returned by me to Frazier Industrial Company upon the termination of my employment:

- ❑ Laptop.
- ❑ All computer devices including, but not limited to, thumb drives, memory sticks, CDs, floppy disks and hard drives.
- ❑ All company manuals.
- ❑ All keys and FOBs.
- ❑ All phones including cell phones.
- ❑ All paper copies of Frazier documents, including client lists, pricing information, quotations, marketing and sales projections and all documents obtained and/or acquired during the course of my employment with Frazier, in all formats including electronic format.
- ❑ All photographs of Frazier products and projects.
- ❑ All research and development data and information in all formats, including electronic format.
- ❑ All Frazier information, data and property which I acquired during the course of my employment with Frazier, including all information contained on any personal electronic device, all information on any computer hard drive, back up tape, CD-ROM, thumb drive, memory stick, DVD-ROM, jaz and zip drive and/or floppy disk.
- ❑ All passwords used for any laptops, phones or other Frazier equipment utilized by me.

I also confirm that I have deleted any and all confidential, proprietary and/or protected Frazier information contained on any personal electronic or computer devices owned by me or in my possession.

**I hereby certify that the foregoing statements made by me are true.  I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.  I also acknowledge and understand that Frazier is relying upon the representations contained herein that all information and property listed above has been returned to Frazier, including all confidential, proprietary and/or protected information I acquired during the course of my employment with Frazier and that I have deleted any and all Frazier information contained on any personal electronic device or computer.**

Signature: _____

Name:     NICKLAUS LOGRECCO_____

Dated:     May     , 2018_____

# EXHIBIT F

**f** (https://www.facebook.com/REBstorage/) **🐦** (https://twitter.com/REB_Storage) **in**
(https://www.linkedin.com/company/reb-storage-systems-international)
Client Login (https://rebsteel.sharefile.com/Authentication/Login)     Contact Us (https://rebstorage.com/contact-us/)

 (https://rebstorage.com/)

REB Storage Systems International
Designers, Builders, and Installers of Storage & Materials
Handling Solutions

Call Now:
# 1.800.252.5955 (tel:1-800-252-5955)

# REB Locations

REB is capable of servicing companies on a local, national, and international scale.

## Corporate Office

REB's corporate office and 100,000 SF warehouse and distribution center is in Chicago. Our warehouse features an exhaustive inventory of storage systems and material handling equipment.

## Branch Offices

- Southern California
- Maine
- Massachusetts
- Michigan

REB Storage Systems International Locations & Contact Information

- Pennsylvania
- New York
- Texas
- Virginia
- Florida
- Dublin, Ireland





To learn more or get help with a project, fill in the contact form or call (800) 252-5955
Whether your project is large or small, we have the expertise to ensure your next project is a success.

# Submit Your Inquiry

Full Name*

Title/Position

Company*

Your Phone Number

Email*

Project Location*

How Did You Hear About REB?

Message

Submit

---

## — Testimonials —

### Brian Dubin

All Products Automotive, Inc.

*"We have been a customer for over 15 years. REB offers a good selection of products at great prices. They are an excellent source of materials along with suggestions and information on a variety of storage issues."*

### Bruce Moulton

Harrington Industrial Plastics

*"REB is by far my favorite vendor, the customer service and dedication to making sure every order is complete and on time. Fantastic communication, and an absolute pleasure to work with."*

### Gary I

Epko Ir

*"First ti
excelle
Would

---

• © 2018 REB Storage Systems International • 1.800.252.5955 (tel:1-800-252-5955) •

• Privacy Policy (/privacy-terms/) • Sitemap (/site-map/) • Client Login (https://rebsteel.sharefile.com/Authentication/Login) •

**f** (https://www.facebook.com/REBstorage/) 🐦 (https://twitter.com/REB_Storage) **in**
(https://www.linkedin.com/company/reb-storage-systems-international)
Client Login (https://rebsteel.sharefile.com/Authentication/Login)        Contact Us (https://rebstorage.com/contact-us/)



**REB Storage Systems International**
Designers, Builders, and Installers of Storage & Materials
Handling Solutions                                    (https://rebstorage.com/)

Call Now:
# 1.800.252.5955 (tel:1-800-252-5955)

# REB People

In addition to our great products and services REB couldn't serve you best without the
excellent staff.

Home (/home/) / About (/about-reb/) / People

## Management                                                          ⌄

## Project Management                                                  ⌄

# Nicklaus Logrecco

Project Manager
*Team Member since 2018*

Originally a Southern California Native, Nick is a California State University, Fullerton alumni with degrees in Civil and Architectural Engineering. With over 30 years of experience as a multi-disciplined Design Engineer, Project Manager and Business Owner involving Engineering Design, Fabrication and Construction projects throughout the North and Central America and Japan, Nick's experience spans various industries specializing in turn-key Material Handling and Crane Systems.

## Marketing ⌄

## Operations ⌄

## Sales ⌄

## Administration ⌄

• © 2018 REB Storage Systems International • 1.800.252.5955 (tel:1-800-252-5955) •

• Privacy Policy (/privacy-terms/) • Sitemap (/site-map/) • Client Login (https://rebsteel.sharefile.com/Authentication/Login) •

# EXHIBIT G

# FRAZIER ®

## INDUSTRIAL COMPANY

### 91 Fairview Avenue, Long Valley, NJ 07853

William F. McEnroe
Vice President and General Counsel
wmcenroe@frazier.com

Phone: 908-876-3001 Ext. 274
Fax:     908-876-1716

May 25, 2018

*Via e-mail nlogrecco@yahoo.com and Regular Mail*

Mr. Nicklaus Logrecco
1377 Grassland Road
Dayton, NV  89403

Dear Nick:

As I explained in my letter of May 15, 2018, when you accepted Frazier's offer of employment and signed the Employment Offer Letter on December 4, 2012, you also executed a Confidentiality, Invention and Non-Compete Agreement.  Thereafter, on April 4, 2014, you signed the Frazier Conflict of Interest & Ethics Policy. Among the requirements of those documents are that:

     1.     During your employment and at all times thereafter, you will hold secret and confidential all inventions, trade secrets and confidential information relating to the Company's business including, without limitation, customer and prospective customer names and data (collectively **"Confidential Information"**).

     2.     During the term of the Agreement and for one (1) year after termination of the Agreement, you will not, directly or indirectly, associate or otherwise: (i) become affiliated with any corporation, business entity or person engaged in the rack system business or other business competitive with the Company in the United States, Canada or any other country in which the Company conducts business; or, (ii) sell or promote any rack system or other product competitive with the Company's products or render any sales, engineering, design, strategic planning, marketing or other service to any other corporation, business entity or person competitive with the Company.

Although it had been our expectation that you would respect your responsibilities to the Company, it is my understanding that you have accepted and begun employment with REB Storage Systems International of Chicago, IL ("REB"), which company appears to be engaged in the rack system business and sells products and services competitive with Frazier's products and services.  As such, REB is a direct competitor of Frazier. If you have not already done so, I suggest that you inform REB of the existence your Confidentiality, Invention and Non-Compete Agreement with Frazier.

Since it appears to us that your acceptance of employment with REB would contravene your Agreement with Frazier, we wish to afford you an opportunity to provide further information to Frazier in order to explain how you believe that your employment with REB will not violate the Agreement.   In the absence

May 25, 2018
Page 2
_____

of an immediate response, we will have no alternative but to communicate directly with REB to alert them to the existence of the Agreement and your threatened breach thereof. Frazier also will aggressively seek to enforce the terms of the Agreement.

Frazier reserves all of its legal rights and remedies in connection with your employment and your acceptance of employment in violation of your agreements including, without limitation, the right to recover from you any damages sustained and to enjoin any on-going or further violations of your agreements with the Company and your obligations thereunder.

We await your prompt response.

Very truly yours,

FRAZIER INDUSTRIAL COMPANY

BY:      WILLIAM F. McENROE

WFM: mb
cc:      Mr. Carlos P. Oliver, President
         Mr. Peter Goffredo
         Ms. Lisa LaGrasta

# EXHIBIT H

# FRAZIER
## INDUSTRIAL COMPANY

91 Fairview Avenue, Long Valley, NJ 07853

William F. McEnroe
**Vice President and General Counsel**
wmcenroe@frazier.com

Phone: 908-876-3001 Ext. 3274
Fax:   908-876-1716

June 1, 2018

*Via Fax 773-252-0303 and Regular Mail*

REB Storage Systems International
4556 West Grand Avenue
Chicago, Illinois   60639-4734

Attention:     Mr. Tom Lesko, Chief Executive Officer

Re:     Nicklaus Logrecco – Frazier Industrial Company

Dear Mr. Lesko:

I am writing to you in my capacity as General Counsel for Frazier Industrial Company of Long Valley, New Jersey.

I have been advised that Nicklaus Logrecco, a former employee of Frazier, who resigned effective May 18, 2018, has accepted a position with REB Storage Systems International in Chicago, Illinois ("REB").

We wish to advise you that, at the time Mr. Logrecco became employed by Frazier in 2012, he executed a Confidentiality, Invention and Non-Compete Agreement, a copy of which is enclosed, which defines as Confidential Information all inventions, trade secrets and confidential information relating to the Company's business, including, but not limited to, patent and possible patent inventions, engineering, fabrication and design drawings, manufacturing techniques and processes, research and development data and activities, marketing and sales plans, sales and financial data, pricing formulas, customer and prospective customer names and data and employee names and related information.

The subject Agreement also includes the following provision:

> In order to ensure that Confidential Information and Inventions are not used or disclosed in violation of this Agreement, you agree that during the term of this Agreement and for one (1) year after termination of the Agreement, you shall not, directly or indirectly, associate or otherwise (i) become affiliated with any other business competitive with the Company in the United States, Canada or any other country in which the Company conducts business or (ii) sell or promote any rack system or other product competitive with the Company's product or render any sales, engineering, design, strategic planning, marketing or other service of any other corporation, business entity or person

competitive with the Company in the United States, Canada or any other country in which the Company conducts business.

We believe that for Mr. Logrecco to accept employment with REB clearly would contravene this provision of his Agreement with Frazier and we have so advised him. We also have suggested that he provide a copy of his Agreement to you. Further, and without prejudice, we understand that REB may have solicited Mr. Logrecco for employment in the course of his employment with Frazier. If true, such actions could constitute unfair business practices including an unlawful conspiracy to injure Frazier.

We trust that REB is a conscientious company and employer, and would not knowingly seek to employ an individual who would violate the terms of an existing agreement with his prior employer. We also are hopeful that you share our business ethics and the goal of promoting higher standards of conduct and ethical business practices within our industry.

We would appreciate your prompt confirmation that REB will not proceed to employ Mr. Logrecco in violation of his Agreements with Frazier.

If you wish to discuss this matter, you may call Carlos Oliver, the President of Frazier, directly or have your counsel call me. If we do not hear from you within the next day or so, we will proceed to enforce Frazier's rights.

Thank you.

Very truly yours,

FRAZIER INDUSTRIAL COMPANY

BY:    WILLIAM F. McENROE

WFM: mb
cc:    Carlos P. Oliver, President (*Via e-mail*)
       Peter Goffredo (*Via e-mail*)
       Lisa Lagrasta (*Via e-mail*)

# CONFIDENTIALITY, INVENTION AND NON-COMPETE AGREEMENT

Dear

This Confidentiality, Invention and Non-Compete Agreement (the "Agreement") supplements the Employment Agreement dated              you executed with Frazier Industrial Company.

During the course of your employment with Frazier Industrial Company or any of its subsidiaries or affiliates (collectively referred to as the "Company"), you will have access to or may develop trade secrets and confidential information relating to the Company's business, the use or disclosure of which could cause injury to the Company. You may also, as a result of your access to such trade secrets and confidential information and other information relating to the Company's business, conceive various inventions or discoveries. Therefore, in consideration of your employment with the Company, you agree to do the following:

1.        You will, during your employment and at all times thereafter, hold secret and confidential all inventions, trade secrets, and confidential information relating to the Company's business, including but not limited to, patentable or unpatentable inventions, engineering, fabrication and design drawings, manufacturing techniques and processes, research and development data and activities, marketing and sales plans, sales and financial data, pricing formulas, customer and prospective customer names and data, and employee names and related information (collectively "Confidential Information"). You will not at any time during your employment or thereafter reveal or make any commercial or business use of such Confidential Information, directly or indirectly, either for yourself or for any other person, firm or corporation, except for the benefit of the Company or as specifically authorized by the Company in writing. Nothing contained herein is intended to prevent you from making proper use of you general business or professional experience gained during your employment with the Company.

2.        All inventions, discoveries, improvements, processes, methods, prescriptions, developments, devices or formulas ("Inventions") discovered, originated, conceived, invented, developed, completed or devised by you or anyone under your supervision, either solely or jointly with others, at any time while you are an employee, whether or not during business hours, which in any way relate to the Company's business or which result from or are suggested by any work done by you for the Company or at the request of the Company shall immediately become and remain the Company's sole, exclusive and absolute property without compensation to you from the Company (other than payment of your regular salary, wages, or commissions during the period of your employment). You agree to inform the Company promptly of such Inventions and to execute, at the Company's request and sole expense, any applications, including patent applications, powers of attorney, instruments, assignments and all other documents, which the Company deems necessary to carry out effectively the purposes of this Paragraph 2. Your obligations under this Paragraph 2 shall be binding upon your assigns, heirs and legal representatives.

3.        You will keep and maintain adequate and current written records of all Inventions referred to in Paragraph 2, at all stages thereof, which records shall become and remain the property of and be available to the Company at all times.

4.      In order to ensure that Confidential Information and Inventions are not used or disclosed in violation of this Agreement, you agree that during the terms of this Agreement and for one (1) year after termination of the Agreement, you shall not, directly or indirectly as an employee, representative, consultant, officer, director, stockholder, owner partner, associate or otherwise, (i) become affiliated with any corporation, business entity or person engaged in the rack system business or other business competitive with the Company in the United States, Canada or any other country in which the Company conducts business or (ii) sell or promote any rack system or other product competitive with the Company's product or render any sales, engineering, design, strategic planning, marketing or other service for any other corporation, business entity or person competitive with the Company in the United States, Canada or any other country in which the Company conducts business.

5.      On the termination of your employment for any reason whatsoever, you will deliver up to the Company or its authorized representatives all documents, plans drawings, or papers in any way relating to or connected with the affairs of the Company, or of any person, firm or corporation associated with the Company, which may be in your possession or control.

6.      You acknowledge that, in the event of a breach, or the threat of a breach, by you of the provisions of this Agreement, damages would be an inadequate remedy and that the Company shall be entitled, in addition to any other right or remedy available to it at law or in equity, to an injunction, without the posting of any bond or other security, enjoining or restraining you from any violation or threatened violation of this Agreement and you hereby consent to the issuance of such injunction.

7.      You represent and warrant that you are not a party to any contract, agreement, or understanding, which prevents or prohibits you in any way from entering into or performing this Agreement or from being employed by the Company.


_Chilaw M. Impress_              _12/04/12_
AGREED TO AND ACCEPTED              DATE

# EXHIBIT I



Storage Systems International

June 5, 2018

Mr. William F. McEnroe
Vice President and General Counsel
Frazier Industrial Company
91 Fairview Avenue
Long Valley, NJ  07853

Subject:  Nicklaus Logrecco

Dear Mr. McEnroe,

We are in receipt of your letters of June 1 and June 5, 2018 regarding Mr. Nicklaus Logrecco.  Please note that I agree with your comments regarding ethical business practices within our industry.

Pursuant to your request I have instructed all REB Employees and representatives to refrain from any further communication with Frazier's employees.

Sincerely,

Thomas E. Lesko
CEO

CORPORATE OFFICE: 4556 West Grand Avenue, Chicago, IL  60639

Phone: 1-800-252-5955     Fax: 1-773-252-0303     www.rebstorage.com