Not for Publication

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

FRAZIER INDUSTRIAL COMPANY,

*Plaintiff,*

v.

NICKLAUS M. LOGRECCO, a/k/a NICK
LOGRECCO, REB STEEL EQUIPMENT
CORP., d/b/a REB STORAGE SYSTEMS
INTERNATIONAL, and JOHN DOES 1-10,

*Defendants.*

Civil Action No. 18-12426

**OPINION**

**John Michael Vazquez, U.S.D.J.**

Plaintiff Frazier Industrial Company ("Frazier") alleges that its former employee, Defendant Nicklaus "Nick" Logrecco, misappropriated Frazier's confidential business information and brought it with him to his new job with a national competitor, Defendant REB Steel Equipment Corp., d/b/a/ REB Storage Systems International ("REB"). D.E. 15. Currently pending before this Court are two motions to dismiss Plaintiff's Second Amended Complaint filed by REB and Logrecco pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction. D.E. 28, 48. The Court reviewed the parties' submissions in support and in opposition[1] and decided the motion without oral argument pursuant to Fed. R. Civ. P. 78(b) and L. Civ. R. 78.1(b). For the reasons set forth below, Defendant Logrecco's motion is denied.

---

[1] Defendant REB's brief in support of its motion will be referred to as "REB Br.," D.E. 28-1; Defendant Logrecco's brief in support of his motion will be referred to as "LOG Br.," D.E. 48-1; Plaintiff's omnibus brief in opposition will be referred to as "Pl. Opp'n," D.E. 50; Defendant REB's reply will be referred to as "REB Reply," D.E. 52; Defendant Logrecco's reply will be referred to as "LOG Reply," D.E. 51.

Defendant REB's motion is granted as to the non-compete claims but Plaintiff is granted jurisdictional discovery as to the trade secret/confidential information claims.

## I. BACKGROUND

Defendant Logrecco worked for Plaintiff Frazier, a New Jersey corporation with its headquarters in New Jersey, for over six years. D.E. 15 ("SAC") ¶¶ 13, 29, 57, 66. Frazier designs, manufacturers, and installs steel rack systems. *Id.* ¶ 21. Logrecco is a resident of Nevada. *Id.* ¶ 14. REB is "an integrator of racking systems and storage handling solutions." *Id.* ¶ 64. REB is an Illinois corporation with its principal place of business in Chicago, Illinois. *Id.* ¶ 15. REB is also authorized to do business in the State of New Jersey, maintains a New Jersey business identification number, and has a designated agent for service of process in New Jersey. *Id.* ¶ 18. REB has facilities throughout the country but none in New Jersey. *Id.* ¶¶ 18, 65.

Logrecco was a senior project manager with Frazier. *Id.* ¶ 29. Logrecco interviewed with Frazier in New Jersey and was hired on or about December 4, 2012. *Id.* Before he started working, Logrecco attended a three-week training at Frazier's headquarters in New Jersey. *Id.* ¶ 31. Logrecco worked remotely from California and then Nevada throughout his employment with Frazier. *Id.* ¶ 30. Frazier issued Logrecco a laptop that remotely connected to Frazier's servers in New Jersey. *Id.* ¶ 30. Logrecco's supervisor, Peter Goffredo, was in New Jersey, and Logrecco communicated with him by email every few days. *Id.* ¶ 32; D.E. 48-4 ("Logrecco Dep.") at 50:5-8. Frazier's accounting department, administrative department, project management department, human resources department, engineering department, and information technology department were also located in New Jersey. SAC ¶ 31. Logrecco frequently communicated with various employees in these departments. *Id.* ¶¶ 32-35.

2

Logrecco signed a Confidentiality and Non-Compete Agreement (the "Agreement") with Frazier on December 4, 2012, and a Conflict of Interest and Ethics Policy (the "Policy") on April 4, 2014. *Id.* ¶¶ 46-47; Exs. C & D. The Agreement provided that Logrecco will never disclose or make commercial use of Plaintiff's "Confidential Information," as defined in the contract. D.E. 15 at 43. Confidential Information included "fabrication and design drawings, manufacturing techniques and processes, research and developments data and activities, marketing and sales plans, [and] sales and financial data[.]" *Id.* The Policy likewise prohibited Logrecco from disclosing Plaintiff's confidential information. *Id.* at 48. The Agreement further indicated that Logrecco would not work in competition with Plaintiff for one year after "termination of the Agreement[.]" *Id.* at 44.

Logrecco left Plaintiff in May 2018 and then joined Defendant REB. *Id.* ¶¶ 62-63. Plaintiff alleges that Defendant Logrecco improperly used his remote connection to copy and retain confidential information and trade secrets stored on Plaintiff's servers in New Jersey before transitioning to REB, forming the basis of this action. *Id.* ¶¶ 1-3, 61-62, 74

Plaintiff filed its Complaint against Defendants in the Superior Court of New Jersey on July 13, 2018, alleging seven counts: (I) breach of contract; (II) breach of implied covenant of good faith and fair dealing; (III) breach of duty of employee loyalty; (IV) unfair competition; (V) civil conspiracy; (VI) aiding and abetting; and (VII) director liability. D.E. 1-1. Defendants removed the action to this Court on August 3, 2018 based on diversity jurisdiction. D.E. 1. Plaintiff filed an Amended Complaint on August 7, 2018, adding the following claims: (VIII) misappropriation; (IX) violation of the New Jersey Trade Secrets Act, N.J.S.A. 56:15-1 *et seq.*; (X) violation of the New Jersey Computer Related Offenses Act, N.J.S.A. 2A:38A-1 *et seq.*; (XI) conversion; (XII) unjust enrichment. D.E. 6. Plaintiff followed with a Second Amended

3

Complaint on August 13, 2018, adding the following claims: (XIII) tortious interference with contract (listed as Count VIII) and (XIV) violation of the Defend Trade Secrets Act, 18 U.S.C. § 1836 *et seq*. D.E. 15. Plaintiff moved for a temporary restraining order on August 7, 2018, D.E. 7, which the Court denied on August 15, 2018, D.E. 22. Defendant REB then moved to dismiss pursuant to Rule 12(b)(2) for lack of personal jurisdiction on September 14, 2018. D.E. 28. Defendant Logrecco moved for the same on January 15, 2019. D.E. 48. Plaintiff opposed the motions, D.E. 50, and Defendants replied, D.E. 51, 52.

## II. ANALYSIS

Rule 12(b)(2) permits a party to move to dismiss a case for "lack of personal jurisdiction." Fed. R. Civ. P. 12(b)(2). In such a motion to dismiss, the plaintiff "bears the burden of demonstrating the facts that establish personal jurisdiction." *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002). When a court "resolves the jurisdictional issue in the absence of an evidentiary hearing and without the benefit of discovery, the plaintiff need only establish a prima facie case of personal jurisdiction." *Otsuka Pharm. Co. v. Mylan Inc.*, 106 F. Supp. 3d 456, 461 (D.N.J. 2015). In such cases, a court "take[s] the allegations of the complaint as true." *Dayhoff Inc. v. H.J. Heinz Co.*, 86 F.3d 1287, 1302 (3d Cir. 1996).

However, once a defendant raises a jurisdictional defense, "a plaintiff bears the burden of proving by affidavits or other competent evidence that jurisdiction is proper." *Id.* In other words, court looks beyond the pleadings to all relevant evidence and construes all disputed facts in favor of the plaintiff. *See Carteret Sav. Bank v. Shushan*, 954 F.2d 141, 142 n.1 (3d Cir. 1992). Plaintiff must establish "with reasonable particularity sufficient contacts between the defendant and the forum state." *Otsuka*, 106 F. Supp. 3d at 462 (citing *Mellon Bank (E) PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992)). In addition, a court "may always

revisit the issue of personal jurisdiction if later revelations reveal that the facts alleged in support of jurisdiction remain in dispute." *Otsuka*, 106 F. Supp. 3d at 462 n.5 (citing *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 331 (3d Cir.2009)).

A federal court "engages in a two-step inquiry to determine whether it may exercise personal jurisdiction": (1) "whether the relevant state long-arm statute permits the exercise of jurisdiction," and (2) "if so, [whether] the exercise of jurisdiction comports with due process" under the Fourteenth Amendment. *Display Works, LLC v. Bartley*, 182 F. Supp. 3d 166, 172 (D.N.J. 2016) (citing *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 258-59 (3d Cir. 1998)). *See also* Fed. R. Civ. P. 4(k)(1)(A) (indicating that service "establishes personal jurisdiction over a defendant . . . who is subject to the jurisdiction of a court of general jurisdiction[2] in the state where the district court is located."). "New Jersey's long-arm statute extends the state's jurisdictional reach as far as the United States Constitution permits, so the analysis turns on the federal constitutional standard for personal jurisdiction." *Id.* (citing *IMO Industries*, 155 F.3d at 259). Accordingly, the two steps are collapsed into one and "we ask whether, under the Due Process Clause, the defendant has certain minimum contacts with [New Jersey] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 316 (3d Cir. 2007) (internal quotation marks omitted). In other words, to establish personal jurisdiction, the Due Process Clause requires (1) minimum contacts between the defendant and the forum; and (2) that jurisdiction over the defendant comports with "'fair play and substantial justice.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 320 (1945)).

---

[2] General jurisdiction as used in Rule 4(k) refers to subject-matter jurisdiction rather than personal jurisdiction.

"Personal, or in personam, jurisdiction, [generally] divides into two groups: 'specific jurisdiction' and 'general jurisdiction.'" *Display Works*, 182 F. Supp. 3d at 172 (citing *Burger King*, 471 U.S. at 472 n. 14 (1985)). Specific jurisdiction "depends on an affiliatio[n] between the forum and the underlying controversy (i.e., an activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation)." *Id.* (quoting *Walden v. Fiore*, 571 U.S. 277, 284 n.6 (2014)). General jurisdiction "permits a court to assert jurisdiction over a defendant based on a forum connection unrelated to the underlying suit." *Id.* (quoting *Walden*, 571 U.S. at 284 n.6). Personal jurisdiction can also be obtained through consent, waiver, or in-state service on a defendant. *See Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 590-97 (1991) (regarding consent via a forum selection clause); *Burnham v. Superior Court of Cal.*, 495 U.S. 604, 628 (1990) (regarding in-state service); *In re Asbestos Products Liability Litigation (No. VI)*, 921 F.3d 98, 104-05 (3d Cir. 2019) (regarding waiver); *Jasper v. Bexar County Adult Detention Center*, 332 Fed App'x. 718, 719 (3d Cir. 1999) (regarding consent).

General Personal Jurisdiction and Consent

If a company is subject to a forum's general jurisdiction, it can be sued there on any matter. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). General jurisdiction, also called all-purpose jurisdiction, may be asserted over an out-of-state corporation "when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Id.* For an entity, its "place of incorporation and principal place of business are paradigm bases for general jurisdiction[.]" *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (internal quotation marks omitted). Once general jurisdiction is established, a court may hear *any and all claims* against the corporation. *Goodyear*, 564 U.S. at 919. As noted, REB is an Illinois corporation and maintains its principal place of business in

the same state, which means that it is not at home in New Jersey under the two "paradigm bases" for general jurisdiction. Plaintiff does not argue that REB is otherwise "at home" in New Jersey.[3]

Plaintiff, however, argues that REB consented[4] to personal jurisdiction by registering to do business in New Jersey and designating an agent for service of process in the state. Pl. Opp'n at 24-25. No party contests that an individual or entity can consent to personal jurisdiction. Plaintiff cites to *Bane v. Netlink, Inc.*, 925 F.2d 637 (3d Cir. 1991), for the proposition that "[i]n the Third Circuit, if a corporation registers to do business and designates an agent for service of process in a state, it consents to jurisdiction in that state." Pl. Opp'n at 24.

In *Bane*, the Third Circuit reviewed whether the Eastern District of Pennsylvania had personal jurisdiction over the defendant corporation, Netlink. 925 F.2d at 638. At the outset, the *Bane* court indicated that it was not determining whether Netlink was subject to general or specific jurisdiction because the circuit found that the issue of consent controlled. *Id.* at 640. Netlink had obtained authorization to conduct business in the state of Pennsylvania. *Id.* at 639. The relevant Pennsylvania statute expressly provided that that such relationship "shall constitute a sufficient basis . . . to exercise general personal jurisdiction." *Id.* (quoting 42 P.C.S.A. § 5301(a) (1990)). The court in *Bane* therefore concluded that in light of the Pennsylvania law, Netlink had consented to personal jurisdiction in Pennsylvania. *Id.* at 641.

Unlike the Pennsylvania statute in *Bane*, the pertinent New Jersey statutes do not indicate that a foreign corporation is also subject to general personal jurisdiction when the entity registers

---

[3] Plaintiff does not argue that the Court has general jurisdiction over Defendant Logrecco. "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile[.]" *Goodyear*, 564 U.S. at 924. Logrecco is domiciled in Nevada.

[4] Plaintiff does not argue that that REB is subject to personal jurisdiction based on in-state service on its registered agent. *See, e.g., Senju Pharm. Co. v. Metrics, Inc.*, 96 F. Supp. 3d 428, 438 (D.N.J. 2015). As a result, the Court does not address this issue.

7

to do business and/or names a registered agent. N.J.S.A. § 14A:13-3 requires a foreign corporation to obtain a "a certificate of authority" from the New Jersey Secretary of State before transacting business in the state. N.J.S.A. § 14A:4-1 in turn requires a foreign corporation to maintain a registered office and registered agent in New Jersey. N.J.S.A. § 14A:4-2 adds that a corporation can be served through its designated agent.

District courts in this circuit have reached different conclusions as to the reach of *Bane* following the Supreme Court's decision in *Daimler*. In *Astrazeneca AB v. Mylan Pharm., Inc.*, 72 F. Supp. 3d 549, 556-57 (D. Del. 2014), the court concluded that registering to do business in Delaware could no longer serve as a basis for personal jurisdiction in light of the *Daimler* decision. However, the court in *Acorda Therapeutics, Inc. v. Mylan Pharm. Inc.*, 78 F. Supp. 3d 572 (D. Del. 2015), came to the opposite conclusion. The *Acorda* court determined that *Daimler* did not eliminate consent as a basis for general personal jurisdiction. *Id.* at 588. To this end, the district judge determined that "*Daimler* does not expressly address consent." *Id.* at 589. Turning to consent by registration, the court in *Acorda* noted that when compared to Pennsylvania's law in *Bane*, Delaware's registration statutes did not contain an explicit provision as to consenting to personal jurisdiction. *Id.* at 585-87 (citing 8 Del. C. §§ 371, 376). However, the district court observed that consent could nevertheless be found if judicial decisions clearly interpreted the Delaware statutes as resulting in a consent to general jurisdiction. *Id.* at 585-87. The *Acorda* court continued that the since 1988, the Delaware Supreme Court had unambiguously held that when a foreign corporation authorized an agent to receive process within the state, the entity consented to personal jurisdiction. *Id.* at 587 (citing *Sternberg v. O'Neil*, 550 A.2d 1105, 1115-16 (Del. 1988)). As a result, the district court concluded that the defendant had consented to personal jurisdiction in Delaware when it registered there in 2010. *Id.* at 588.

8

Like district courts within the circuit, courts within this district have also reached different outcomes. In *Otsuka*, 106 F.Supp.3d 456, Chief Judge Simandle concluded that the defendant consented to personal jurisdiction in New Jersey in light of the New Jersey statutes. The *Otsuka* court observed that the Supreme Court's landmark decision in *International Shoe* addressed matters in which consent was not at issue. *Id.* at 467 (citing *Int'l Shoe*, 326 U.S. at 317). The district court also found that *Daimler* did not address the issue of consent to personal jurisdiction. *Id.* at 468. The chief judge further noted that Supreme Court precedent predating *International Shoe* endorsed the consent-by-registration theory in certain circumstances. *Id.* at 467-68 (citing *Neirbo Co. v. Bethlehem Shipbuilding Corp.*, 308 U.S. 165 (1939); *Robert Mitchell Furniture Co. v. Selden Breck Const. Co.*, 257 U.S. 213 (1921); *Pa. Fire Ins. Co. of Phila. v. Gold Issue Mining & Milling Co.*, 243 U.S. 93 (1917)). After reviewing *Bane*, the court in *Otsuka* (like the judge in *Acorda*) found that "designation of an in-state agent for service of process in accordance with a state registration statute may constitute consent to personal jurisdiction, if supported by the breadth of the statute's text *or interpretation.*" *Id.* at 469. (emphasis added) (citation omitted). Chief Judge Simandle found that in light of decisions in this district and a trial court's ruling in *Litton Indus. Sys., Inc. v. Kennedy Van Saun Corp.*, 117 N.J. Super. 52 (Law. Div. 1971), the defendant had consented to personal jurisdiction in New Jersey by, among other things, registering to do business in New Jersey and appointing an in-state agent for service of process. *Id.* at 470-71. Other courts in the district have reached the same conclusion as *Otsuka*. *See, e.g.*, *Sadler v. Hallsmith SYSCO Food Servs.*, No. 08-4423, 2009 WL 1096309 (D.N.J. 2009).

In comparison, Judge Arleo in *Display Works*, 182 F. Supp. 3d at 179, held that "New Jersey's registration and service statutes do not constitute consent to general jurisdiction because

they do not contain express reference to any such terms." The court in *Display Works* first discussed the *Bane* decision. *Id.* at 173-74 (citing *Bane*, 925 F.2d at 638-41). Judge Arleo then distinguished *Bane*, noting that the New Jersey statutes and relevant court rule "do not expressly discuss consent or general jurisdiction." *Id.* at 174-76. The *Display Works* court also did not find *Litton* to be persuasive, indicating that the trial court in *Litton* did not review the text of the relevant statutes. *Id.* at 176 (citing *Litton*, 117 N.J. Super. at 61). As did the *Otsuka* court, Judge Arleo also recognized the Supreme Court's prior holdings concerning consent to personal jurisdiction. *Id.* (citing *Neirbo*, 308 U.S. at 165; *Pa. Fire Ins. Co.*, 243 U.S. at 93). Judge Arleo concluded, however, that rulings announced in *Neirbo* and *Pennsylvania Fire* could not be reconciled with the Supreme Court's more recent *Daimler* decision. *Id.* at 176. The *Display Works* court continued that when *Neirbo* and *Pennsylvania Fire* were decided, the Supreme Court was still analyzing personal jurisdiction pursuant to the then-controlling precedent established in *Pennoyer v. Neff*, 95 U.S. 714 (1878), rather than *International Shoe* and *Daimler*. *Id.* at 177-78. Judge Arleo remarked that "[w]ere the Court to follow *Litton* and its reliance on the *Pennoyer*-era cases, it would not be able to follow the general jurisdictional structure explained in *Daimler*." *Id.* at 178.

This Court previously agreed with the decision in *Display Works*. *See Boswell v. Cable Services Co., Inc.*, Civ. No. 16-4498, 2017 WL 2815077 (D.N.J. June 29, 2017). While the Court reaches the same conclusion here, it takes a moment to further refine its rulings as to this thorny issue. First, the Court agrees with the decisions in *Acorda* and *Otsuka*, finding that the Supreme Court's watershed decision in *Daimler* does not control. In this regard, the Court parts

ways with *Display Works*[5] and the Court's prior analysis in *Boswell*. While *Daimler* undoubtedly clarified the scope of general personal jurisdiction, the decision did not focus on, or analyze, consent. To the contrary, the *Daimler* court appeared to reference consent solely as a juxtaposition to the issue before it. *See, e.g., Daimler*, 571 U.S. at 129 ("'[The Court's] 1952 decision in *Perkins v. Benguet Consol. Mining Co.* remains the textbook case of general jurisdiction appropriately exercised over a foreign corporation *that has not consented* to suit in the forum.'" (quoting *Goodyear*, 564 U.S. at 927-28) (bracket in original) (emphasis added)). Thus, *Bane* remains binding precedent in this circuit. As a result, if the New Jersey statutes expressly provided that by registering to do business in New Jersey, or by designating an in-state agent for service of process, REB consented to personal jurisdiction, this Court would find in favor of Plaintiff. However, as recognized by both *Otsuka* and *Display Works*, the New Jersey laws do not contain such explicit language.

Nevertheless, the Court finds the reasoning of *Acorda* and *Otsuka* persuasive. That is, even if the relevant statutes do not expressly provide that an entity consents by registering and/or designating an agent, a corporation can nevertheless be deemed to have consented if clear state precedent has so interpreted the statutes. For example, in *Acorda*, the Delaware Supreme Court had definitively and unambiguously ruled that the Delaware registration statutes resulted in party having consented to general jurisdiction. The difficulty here is that the *Otsuka* court, along with Frazier, rely on the *Litton* decision. *Litton*, however, was a trial court decision. While the

---

[5] The Court agrees that *Pennoyer* was overruled by *International Show* vis-à-vis specific personal jurisdiction. The Court likewise agrees that *Daimler* (following *Goodyear*) sets forth binding precedent as to general personal jurisdiction. But the Court finds that *Daimler* does not control as to consent. The Court is also not convinced that either *International Shoe* or *Daimler* drastically altered the Supreme Court's prior analytical framework as to other means of acquiring personal jurisdiction, such as by consent, waiver, or in-state service. *See, e.g., Burnham*, 495 U.S. at 604 (finding that in-state service on an individual conferred personal jurisdiction).

opinion can stand as persuasive authority, it is not binding precedent on any court in New Jersey. *Paff v. Galloway Twsp.*, 229 N.J. 340, 351 (2017); *S&R Associates v. Lynn Realty Corp.*, 338 N.J. Super. 350, 356 (App. Div. 2001); *State v. Machuzak*, 227 N.J. Super. 279, 281 (Law Div. 1988). The Court finds that a single, non-binding trial court decision construing New Jersey's law is insufficient to provide adequate notice under the Due Process Clause of the Fourteenth Amendment. This Court might very well reach a different result if there was a clear ruling from the New Jersey Supreme Court, or perhaps unanimous and unambiguous rulings from New Jersey's Appellate Division, *before* REB registered to do business in New Jersey or designated an in-state agent for service of process. However, Plaintiff has not pointed the Court to any such authority nor could the Court locate any. As a result, the Court finds that REB did not consent to general personal jurisdiction by complying with N.J.S.A. §§ 14A:4-1, 14A:4-2, and 14A:13-3.

Specific Personal Jurisdiction - Logrecco

Plaintiff also argues that the Court has specific jurisdiction over Defendants REB and Logrecco. Pl. Opp'n at 14-23, 25-27. "Specific jurisdiction requires that the defendant 'purposefully directed his activities at residents of the forum and the litigation results from alleged injuries that arise out of or relate to those activities.'" *MaxLite, Inc. v. ATG Elecs., Inc.*, 193 F. Supp. 3d 371, 384 (D.N.J. 2016) (citing *Burger King*, 471 U.S. at 472). "The minimum contacts analysis depends upon 'the relationship among the defendant, the forum, and the litigation.'" *Id.* (quoting *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977)). Yet, actual "[p]hysical presence within the forum is not required to establish personal jurisdiction over a nonresident defendant." *Id.* (quoting *IMO Industries*, 155 F.3d at 259).

The Third Circuit has set forth a three-part test, the "*O'Connor* test," to determine whether specific jurisdiction exists as to a certain defendant. *Id.* (citing *O'Connor*, 496 F.3d at

317). First, the defendant must have "purposefully directed [its] activities at the forum." *Id.*
(citing *O'Connor*, 496 F.3d at 317). This factor has also been described as "purposeful
availment." *Burger King*, 471 U.S. at 475. It focuses on contact that the defendant itself created
with the forum state. *Id.* The "purposefully directed" or "purposeful availment" requirement is
designed to prevent a person from being haled into a jurisdiction "solely as the result of random,
fortuitous, or attenuated contacts" or due to the "unilateral activity of another party or third
person." *Id.* (internal quotation marks omitted) (citing *Keeton v. Hustler Magazine, Inc.*, 465
U.S. 770, 774 (1984)); *World-Wide Volkswagen Corp. v. Woodson*, 44 U.S. 286, 299 (1980);
*Helicopteros Nacionales de Colom., S.A. v. Hall*, 466 U.S. 408, 417 (1984)).

Second, the litigation must "arise out of or relate to at least one of those activities."
*MaxLite*, 193 F. Supp. 3d at 384 (citing *O'Connor*, 496 F.3d at 317). This has been described as
the "relatedness" element. *See id.* at 386. To meet this element, "causal connection can be
somewhat looser than the tort concept of proximate causation, but it must nonetheless be
intimate enough to keep the quid pro quo proportional and personal jurisdiction reasonably
foreseeable." *O'Connor*, 496 F.3d at 323 (citation omitted). This is a "necessarily fact-
sensitive" inquiry. *Id.* The "animating principle" behind it "is the notion of a tacit quid pro quo
that makes litigation in the forum reasonably foreseeable." *Id.* at 322.

Third, the exercise of jurisdiction must "otherwise comport with fair play and substantial
justice." *MaxLite*, 193 F. Supp. 3d at 384 (citing *O'Connor*, 496 F.3d at 317). Notably, "[t]he
existence of minimum contacts makes jurisdiction presumptively constitutional, and the
defendant 'must present a compelling case that the presence of some other considerations would
render jurisdiction unreasonable.'" *O'Connor*, 496 F.3d at 324 (quoting *Burger King*, 471 U.S.
at 477). Factors to consider are "the burden on the defendant, the forum State's interest in

adjudicating the dispute, the plaintiff's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004). Yet, jurisdiction will only be unreasonable in "rare" cases and a plaintiff's burden to show an absence of fairness or lack of substantial justice is "heavy." *O'Connor*, 496 F.3d at 324.

Specific jurisdiction determinations are "claim specific." *Remick v. Manfredy*, 238 F.3d 248, 255 (3d Cir. 2001). "[A] conclusion that the District Court has personal jurisdiction over one of the defendants as to a particular claim asserted by [the plaintiff] does not necessarily mean that it has personal jurisdiction over that same defendant as to [the plaintiff]'s other claims." *Id.* The Third Circuit has recognized that although it "may not be necessary" to "conduct a claim-specific analysis" in "every multiple claim case, . . . because there are different considerations in analyzing jurisdiction over contract claims and over certain tort claims," such differentiation is required in certain circumstances. *Id.*

Here, Plaintiff brings fourteen counts against two Defendants. Given that Plaintiff has asserted a number of different claims – some that require an analysis slightly different than the general analysis described above – against different Defendants, the Court conducts a claim-specific analysis to the extent that it is required to appropriately analyze jurisdiction as to these different claims against different Defendants.

The Court first analyzes Plaintiff's breach of contract and related claim against Defendant Logrecco. Plaintiff brings claims against Defendant Logrecco for breach of contract (Count I), SAC ¶¶ 83-90, and breach of implied covenant of good faith and fair dealing (Count II), SAC ¶¶ 91-95. Essentially, Plaintiff argues that Defendant Logrecco misappropriated Plaintiff's

confidential information in transitioning to a competitor in violation of non-compete and confidentiality agreements that he signed with Plaintiff. Pl. Opp'n at 1.

In addition to the *O'Connor* three-part test described above, "[i]n determining jurisdiction over a breach of contract claim, [a district court] must consider the totality of the circumstances, including the location and character of the contract negotiations, the terms of the contract, and the parties' actual course of dealing." *Remick*, 238 F.3d at 256 (3d Cir. 2001). A district court should "should inquire whether the defendant's contacts with the forum were instrumental in either the formation of the contract or its breach." *Telcordia Tech Inc. v. Telkom SA Ltd.,* 458 F.3d 172, 177 (3d Cir. 2006) (citing *Gen. Elec. Co. v. Deutz AG*, 270 F.3d 144, 150 (3d Cir. 2001)). Further, "where a long-term relationship has been established, actual territorial presence becomes less determinative." *Id.* (citing *General Electric*, 270 F.3d at 1501). In essence, "[p]arties who reach out beyond their state and create continuing relationships and obligations with citizens of another state are subject to the regulations of their activity in that undertaking." *General Electric*, 270 F.3d at 151 (citing *Burger King*, 471 U.S. at 473) (internal quotations omitted).

As to the first element of the *O'Connor* test, purposeful availment, the Eastern District of Pennsylvania recently provided a useful evaluation. *See Neopart Transit, LLC v. Mgmt. Consulting, Inc.*, No. 16-3103, 2017 WL 714043 (E.D. Pa. Feb. 23, 2017).[6] In *Neopart*, the plaintiff, a Pennsylvania company, alleged that two individual defendants, New York residents and former employees of the plaintiff, left the plaintiff's company with confidential information and trade secrets to join a competitor in violation of confidentiality agreements. *Id.* at *1-2. The defendants were interviewed in New York, hired in New York, and worked from New York for

---

[6] Like New Jersey, Pennsylvania extends personal jurisdiction to full extent allowable under the United States Constitution. *See id.* at *4 (citing 42 Pa. C.S.A. § 5322(b)).

the plaintiff's Pennsylvania-based company. *Id.* at *6. The parties also signed the confidentiality agreements in New York. *Id.* However, the district court nonetheless found that the defendants' "contacts with Pennsylvania satisfy[ied] the purposeful availment requirement[.]" *Id.*.

The court in *Neopart* reasoned that "communicating with Pennsylvania was a necessary component of the [defendants'] employment" because (a) a defendant's immediate supervisor "was located in Pennsylvania and the two exchanged emails approximately three times a week"; (b) a defendant "regularly contacted the [plaintiff's] facility in Pennsylvania for questions related to parts, emergency orders and other issues related to [project] management"; and (c) "[t]he email server by which each of the [defendants] conducted their job requirements was located in Pennsylvania" and the defendants "sent, received or were copied on more than 10,000 emails with [the plaintiff's] personnel in Pennsylvania" in a two-year period *Id.* The *Neopart* court continued that the defendants "very ability to earn a living was channeled through Pennsylvania," as the defendants (a) "received paychecks from Pennsylvania"; (b) "exchanged emails with human resources personnel in Pennsylvania on a regular basis"; and (c)"interacted with Human Resources personnel in Pennsylvania" as to vacations and benefits. *Id.* Finally, the district judge noted, "the confidential information and trade secrets allegedly misappropriated by the Individual Defendants were created and prepared in Pennsylvania," as the drive that a defendant gave to the competing company's executive contained proprietary information "downloaded from a computer connected to [the plaintiff]'s computer servers in Pennsylvania." *Id.* Thus, even though the defendants worked from New York, were interviewed in New York, and were hired in New York, the *Neopart* court found that the "Individual Defendants' contacts with Pennsylvania satisf[ied] the purposeful availment requirement." *Id.*

Here, Defendant Logrecco's contacts with New Jersey similarly satisfy the purposeful availment element as to the breach of contract claims. Defendant Logrecco worked remotely for Plaintiff from California and Nevada. SAC ¶ 30. However, he was interviewed in New Jersey, hired in New Jersey, and entered into the Agreement in New Jersey. *Id.* ¶ 29. He also attended a three-week training course at Plaintiff's headquarters in New Jersey before beginning work. *Id.* ¶ 31. Further, communicating with New Jersey was a necessary component Defendant Logrecco's employment, as (a) Logrecco's immediate supervisor was located in New Jersey and the two communicated via email every few days, *id.* ¶ 32; Logrecco Dep. at 50:5-8; (b) Logrecco frequently communicated with Plaintiff's New Jersey office for coordination with the engineering department on projects, Logrecco Dep. 44:22-47:22, and the IT department for support, 53:2-59:15; and (c) Logrecco's work laptop, issued by Plaintiff, remotely connected to Frazier's servers in New Jersey, SAC ¶ 30. Additionally, Logrecco's ability to earn a living was channeled through New Jersey, as he (a) received paychecks from New Jersey, and (b) contacted Plaintiff's human resources department in New Jersey. SAC ¶¶ 32-33, 37. Finally, the confidential information and trade secrets that Defendant Logrecco allegedly misappropriated were prepared in New Jersey and stored on Plaintiff's New Jersey servers. *Id.* ¶¶ 36, 39-45. Therefore, the Court finds the purposeful availment element satisfied as to Logrecco and the breach of contract related counts.

As to the second element of the *O'Connor* test, relatedness, the *Neopart* case is also instructive. In *Neopart*, the district court found that the plaintiff's breach of contract claims were "inherent [in the plaintiff's] employment relationship with the [defendants]." *Neopart*, 2017 WL 714043, at *7. The court explained that it was "reasonably foreseeable that, upon agreeing to employment with a Pennsylvania company and interacting with that company each day, [the

defendants] could be subject to suit in Pennsylvania." *Id.* Additionally, the court recognized that defendants "only had access to [the plaintiff]'s trade secrets as a consequence of their employment," as the defendants "became privy to [the plaintiff]'s methods of identifying unique suppliers, pricing arrangements, and inventory management methods via emails and telephone calls to Pennsylvania and access to Pennsylvania computer servers." *Id.* Accordingly, the district court found that "the relatedness requirement [wa]s satisfied." *Id.*

Here, the same conclusion is warranted. Defendant Logrecco agreed to employment with a New Jersey company. SAC ¶¶ 13, 29. He traveled to New Jersey to obtain training from the company and frequently contacted the New Jersey headquarters for support. *Id.* ¶¶ 31-36; Logrecco Dep. 44:22-47:22, 53:2-59:15. He only had access to Plaintiff's trade secrets and confidential information because of this employment. Critically, the Agreement and the Policy expressly governed Logrecco's use of Plaintiff's confidential information, at least some of which he was able to obtain from Plaintiff's New Jersey-based servers. Thus, claims of breaching a contract to not share such confidential information with competitors arises directly out of this employment relationship and the relatedness requirement is also satisfied.

As to the final element of the *O'Connor* three-part test, fair play and substantial justice, "New Jersey has an interest in enforcing its company's rights, in enforcing covenants that are reasonably designed to protect the legitimate interests of its residents, and in protecting the confidential information of its residents." *Chemetall US Inc. v. Laflamme*, No. 16-780, 2016 WL 885309, at *8 (D.N.J. Mar. 8, 2016). As explained above, the existence of minimum contacts makes the exercise of personal jurisdiction presumptively constitutional. The Court does not find this to be the rare case where jurisdiction is unreasonable.

For the foregoing reasons, the Court has personal jurisdiction over Defendant Logrecco as to Counts I and II.

Having found personal jurisdiction over Defendant Logrecco on these two counts, the Court can now exercise pendent jurisdiction over the remaining counts against Defendant Logrecco, so long as all counts "arise from the same nucleus of material fact." *MaxLite*, 193 F. Supp. 3d at 390 (citing *Apostolou v. Mann Bracken*, LLC, No. 07–4950, 2009 WL 1312927, at *9 (D.N.J. May 1, 2009) ("Once a district court has jurisdiction over a defendant for one claim, it may 'piggyback' onto that claim other claims over which it lacks independent personal jurisdiction, provided that all the claims arise from the same nucleus of material fact.")). The Third Circuit takes a liberal interpretation in considering the scope of a "common nucleus of operative fact[s]." *See Children's Vill. v. Sec'y of Pub. Welfare of the Commonwealth of Pa.*, No. 90-7390, 1992 WL 99587, at *3 (E.D.Pa. Apr. 30, 1992) (citing *Skevofilax v. Quigley*, 810 F.2d 378, 385 (3d Cir.1987)). In determining how close the factual overlap must be, "mere tangential overlap of facts is insufficient, but total congruity between operative facts of the two cases is unnecessary." *Nanavati v. Burdette Tomlin Mem'l Hosp.*, 857 F.2d 96, 105 (3d Cir.1988). Where "critical background fact[s]" are "common to all claims," then the claims emerge from the same nucleus of operative facts. *Id.*

Here, the common nucleus of operative fact requirement is easily met. All of Plaintiff's claims against Logrecco are based upon him allegedly misappropriating confidential information and trade secrets from Plaintiff before leaving to join REB. *See* SAC ¶¶ 21-82 (entitled "Facts Relevant to All Counts"). Thus, the Court exercises pendent jurisdiction over all remaining claims against Defendant Logrecco. The Court has personal jurisdiction over Defendant Logrecco for all of Plaintiff's claims against him.

Specific Personal Jurisdiction – REB

Turning to Defendant REB, Plaintiff only argues that the Court has specific jurisdiction for Plaintiff's intentional tort claims, Count VII for tortious interference with contract and Count XII for conversion. Pl. Opp'n at 25-27. As the Court reads the allegations, it appears that Count VII is based on both the confidential information and the non-compete provisions of the Agreement and the Policy. *See* SAC ¶¶ 109-112. Count XII, however, appears to be based solely on the alleged confidential information that Logrecco allegedly took. *See id.* ¶¶ 140-141.

"When an intentional tort is alleged, a slight variation from the *O'Connor* three-part test applies, known as the *Calder* effects test, stemming from the Supreme Court's decision in *Calder v. Jones*, 465 U.S. 783 (1984)." *MaxLite*, 193 F. Supp. 3d at 384 (internal citations omitted). The *Calder* effects test "can demonstrate a court's jurisdiction over a defendant even when the defendant's contacts with the forum alone [] are far too small to comport with the requirements of due process under our traditional analysis." *Id.* (quoting *Marten v. Godwin*, 499 F.3d 290, 297 (3d Cir. 2007)). Under this test, "an intentional tort directed at the plaintiff and having sufficient impact upon [the plaintiff] in the forum may suffice to enhance otherwise insufficient contacts with the forum such that the 'minimum contacts' prong of the Due Process test is satisfied." *Id.* (quoting *IMO Industries.*, 155 F.3d at 260). The *Calder* effects test requires a plaintiff to show that:

> (1) The defendant committed an intentional tort; (2) The plaintiff felt the brunt of the harm in the forum such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of that tort; (3) The defendant expressly aimed his tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity[.]

*Id.* (quoting *IMO Industries*, 155 F.3d at 265-66). The *Calder* effects test, as interpreted by the Third Circuit, still requires that a defendant's "'conduct and connection with the forum State [be]

such that he should reasonably anticipate being haled into court there.'" *Id.* (quoting *Marten*, 499 F.3d at 297).

Here, the intentional tort claims satisfy the first prong. *See MaxLite*, 193 F. Supp. 3d at 388 (tortious interference); *Cavanaugh v. Norton*, No. 13-1162, 2014 WL 980815, at *5 (M.D. Pa. Mar. 13, 2014) (conversion). In addition, Plaintiff will feel the brunt of the harm in New Jersey as a result of this alleged conduct because Plaintiff's business is based in New Jersey. *See Remick*, 238 F.3d at 260 ("[T]he brunt of the harm caused by the alleged intentional tort must necessarily have been felt by [the plaintiff] in Pennsylvania, as his business practice is based in Philadelphia."); *see also MaxLite*, 193 F. Supp. 3d at 388 (D.N.J. 2016) ("At this stage the Court assumes that . . . because [the plaintiff] is a New Jersey company, it likely felt the brunt of the harm in New Jersey." (quoting *Display Works*, 182 F.Supp.3d at 181) (internal quotations omitted)). Thus, the first two elements of the *Calder* effects test are satisfied.

As to the third element, a plaintiff must "(1) show that the defendant knew that the plaintiff would suffer the brunt of the harm caused by the tortious conduct in the forum, and (2) point to specific activity indicating that the defendant expressly aimed its tortious conduct at the forum." *MaxLite*, 193 F. Supp. 3d at 388 (quoting *IMO Industries*, 155 F.3d at 266) (internal quotations omitted). For simplicity, the Court refers to the first prong as "knowledge" and the second prong as "expressly aimed activity."

The *MaxLite* decision is instructive on both prongs of this third element. *See id.* In *MaxLite*, the plaintiff, a New Jersey company, alleged that the defendant company, a California-based competitor, tortiously interfered with the contractual relationships of three of the plaintiff's former employees by hiring them in violation of their non-compete agreements. 193 F. Supp. 3d at 376-77. The court found that the third element of the *Calder* effects test was met as to the

plaintiff's tortious interference claim against the company defendant. *Id.* at 390. As to the first prong, the court found that "[i]n short, [the defendant company] knew of the Agreements, knew of their key provisions (non-competition, non-solicitation, confidentiality, choice of law, and forum selection), and paid for attorney review" of these provisions before hiring the plaintiff's former employees. *Id.* at 388. The defendant company was therefore "well aware of the risk it was taking [by hiring plaintiff's former employees] but proceeded nonetheless to hire the[m]." *Id.* at 390. Thus, the court found that the knowledge prong was met. *Id.*

Here, the Court finds the same. Logrecco testified that before he started with REB on May 21, 2018, he forwarded a May 15, 2018 letter to REB informing REB of Logrecco's Agreement and Policy with Plaintiff. Logrecco Dep. at 82:23-86:16. The letter listed Plaintiff's address as New Jersey.[7] *See* SAC, Ex. E. Logrecco also testified that as a result, REB made him sign an addendum to his employment agreement in which Logrecco acknowledged that REB would not defend Logrecco against a lawsuit filed by Plaintiff for breach of the Agreement or Policy. Logrecco Dep. at 86:17-87:3. Thus, it appears Defendant REB was aware of the risk of hiring Defendant Logrecco given his non-compete and confidentiality agreements with a New Jersey-based company. The knowledge prong of the third element appears to be met.

As to the second prong, expressly aimed activity, the *MaxLite* decision is again instructive. 193 F. Supp. 3d at 390. The *MaxLite* court found that the defendant company not only "kn[ew] that [the plaintiff] [wa]s headquartered in New Jersey," but "used the [plaintiff's former employees] in an effort to increase its sales in New Jersey." *Id.* For example, one of the plaintiff's former employees testified that upon switching to the defendant company, she (a) "was tasked with the duty to do business in New Jersey," (b) "streamlined the sales process in

---

[7] Neither the Agreement nor the Policy contain a forum selection clause.

New Jersey to work through one point-person," (c) "was instrumental in hiring a sales representative to increase sales in northern New Jersey," and "gave [a company defendant] representative explicit instructions to '[g]row business in Southern Jersey.'" *Id.* at 338. Additionally, the company defendant "sent representatives to a trade show held in Atlantic City[,] [New Jersey]," and "had $146,041 total sales within New Jersey[.]" *Id.* at 388-89. Thus, the court found that "the evidence demonstrate[d] that [the defendant company] recruited the [plaintiff's former employees] to, at least in part, increase its business in New Jersey." *Id.* at 338. Such conduct satisfied the expressly aimed activity prong. *Id.*

In contrast, the court in *Radian Guar. Inc. v. Bolen*, 18 F. Supp. 3d 635 (E.D. Pa. 2014), found that the defendant had not expressly aimed its activity at the forum state. In *Radian*, the plaintiff sued a competitor, the defendant company, for tortiously interfering with a non-compete clause between the plaintiff and a former employee of the plaintiff. 18 F. Supp. 3d at 639. The plaintiff argued that the defendant company "aimed [its] conduct at Pennsylvania by establishing and maintaining an employment relationship with [the plaintiff's former employee]." *Id.* at 644. The court rejected this argument, stating that the plaintiff "fail[ed] to explain how the creation of the [the defendant company's] employment relationship with [the plaintiff's former employee] intentionally targeted or focused on Pennsylvania." *Id.*

The *Radian* court noted that the plaintiff "d[id] not allege that the [defendant company] met with or recruited [the plaintiff's former employee] in Pennsylvania," or that the defendant company "hired [the plaintiff's former employee] to work in or serve customers in Pennsylvania." Instead, "in both her role with [the plaintiff] and the [defendant company], [the plaintiff's former employee] worked exclusively from Texas serving customers in the southern United States." *Id.* The court explained that "allegations that the [defendant company] knew

that [the plaintiff]'s headquarters were in Pennsylvania and that the forum selection clause identified Pennsylvania, . . . [were] insufficient to meet the 'expressly aimed' standard." *Id.* at 644-45. Accordingly, the *Radian* court held that "the [defendant company] did not expressly aim [its] alleged tortious activity at Pennsylvania, and [the court therefore] d[id] not have personal jurisdiction over [the defendant company] on this basis." *Id.* at 645; *see also Frutta Bowls Franchising LLC v. Bitner*, No. 18-2446, 2018 WL 6499760 (D.N.J. Dec. 10, 2018) (finding that plaintiff failed to establish the third element of the *Calder* effects test when it "fail[ed] to allege that [the defendant companies] acted with the specific intent to develop a competing franchise for the purpose of harming [the plaintiff] in New Jersey," and instead, it appeared "it appear[ed] that the activities of [the defendant companies] [we]re confined within the state of Florida.").

Here, the facts alleged as to REB are more akin to *Radian* and *Frutta Bowls* than to *MaxLite* with respect to tortious interference with Logrecco's covenant not to compete with Plaintiff. Plaintiff has not alleged that REB hired Logrecco to conduct business in New Jersey. To the contrary, Plaintiff alleges that REB "has hired Logrecco, upon information and belief, to perform the *same duties Logrecco performed while at Frazier*." SAC ¶ 9 (emphasis added). While at Frazier, Logrecco worked remotely out of California and Nevada and "traveled all over the country on behalf of Frazier to manage and oversee the numerous Frazier projects with which he was involved." SAC ¶¶ 30-31. Logrecco testified to only having worked on projects for Frazier in "California, Arizona, Nevada, Oregon, Washington, Idaho, Colorado, Texas, Tennesee, Kentucky, Indiana, Illinois, [and] Maryland[.]" Logrecco Dep. at 42:19-43-18. Logrecco did not indicate that he worked on Plaintiff's projects in New Jersey, and Plaintiff has not presented any evidence to the contrary. In other words, Plaintiff does allege that REB hired Logrecco to work, or serve customers, in New Jersey. Plaintiff also does not allege that REB

24

and Logrecco's negotiations occurred in New Jersey. Plaintiff simply argues that REB's expressly aimed activity at New Jersey was (1) hiring Logrecco, who was bound by New Jersey restrictive covenants, and (2) allegedly misappropriating trade secrets that originated in New Jersey. Pl. Opp'n at 27. As explained above, these allegations are insufficient to show that REB expressly aimed its alleged tortious interference with Logrecco's covenant not to compete with Plaintiff at New Jersey.[8] The third element of the *Calder* effects test is not satisfied as to this claim; the Court does not have personal jurisdiction over REB for Plaintiff's claim that REB tortiously interfered with Logrecco's covenant not to compete with Plaintiff.

However, the Court cannot conclude the same as to (a) REB's alleged tortious interference with Logrecco's confidentiality agreement, and (b) REB's alleged conversion of trade secrets and confidential information. At this stage, Plaintiff has not provided sufficient information for the Court to conclude that it does have specific personal jurisdiction as to REB vis-à-vis Plaintiff's confidential information and/or trade secrets. Yet, Plaintiff has provided sufficient evidence on the issue to permit jurisdictional discovery.

"Although the plaintiff bears the burden of demonstrating facts that support personal jurisdiction, courts are to assist the plaintiff by allowing jurisdictional discovery unless the plaintiff's claim is clearly frivolous." *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (3d Cir. 2003) (internal citations and quotations omitted). "If a plaintiff presents factual allegations that suggest with reasonable particularity the possible existence of the requisite contacts between

---

[8] Plaintiff also implies that REB's letter sent to Plaintiff in New Jersey in response to Plaintiff's cease and desist demand constitutes activity expressly aimed at New Jersey. *See* Pl. Opp'n at 26. The Court disagrees. *See IMO Indusries*, 155 F.3d at 267 (noting that a defendant's responsive communication to the plaintiff within the forum "does not change the analysis" of the third element of the *Calder* effects test).

the party and the forum state, the plaintiff's right to conduct jurisdictional discovery should be sustained." *Id.* (internal citations and quotations omitted).

Here, the Court cannot say that Plaintiff's claims regarding the Court's personal jurisdiction over REB for (a) REB's alleged intentional interference with Logrecco's confidentiality agreement, and (b) REB's alleged conversion of confidential information and trade secrets, are clearly frivolous. Plaintiff has presented sufficient factual allegations to suggest with reasonable particularity that REB was aware of Logrecco's confidentiality agreement with the New Jersey-based Plaintiff, and that REB contemplated the possibility of Logrecco breaching such agreement and conveying Plaintiff's confidential information to REB for the benefit of REB's business. *See* Logrecco Dep. at 86:17-87:3 (explaining that REB made Logrecco sign an addendum to his employment agreement whereby Logrecco acknowledged that REB would not defend Logrecco against a lawsuit filed by Plaintiff for breach of the Agreement or Policy). Thus, the Court orders jurisdictional discovery limited to the trade secret and/or confidential information claims against REB.

### III. CONCLUSION

In sum, the Court denies Defendant Logrecco's motion to dismiss for lack of personal jurisdiction, D.E. 48, and grants in part and denies in part Defendant REB's motion to dismiss for lack of personal jurisdiction, D.E. 28. Plaintiff's claim against Defendant REB for tortious interference with Logrecco's covenant not to compete with Plaintiff is dismissed for lack of personal jurisdiction. Dismissal of this claim against Defendant REB is without prejudice so as to allow Plaintiff an opportunity to refile this claim against REB in an appropriate venue, if Plaintiff chooses to do so. The Court grants Plaintiff's request for jurisdictional discovery, D.E.

50, solely as to Plaintiff's claims against REB in Counts VII and XII concerning Plaintiff's trade secrets and/or confidential information. An appropriate Order accompanies this Opinion.

Dated: July 2, 2019

John Michael Vazquez, U.S.D.J.